# Allen Iron & Steel Co. *v.* Provident Iron & Steel Co., Appellant.

*Contract—Alteration of written instrument—Bond—Principal and surety—Evidence—Province of court and jury.*

In a suit upon a bond to guarantee the performance of a contract which was alleged to have consisted of a letter containing an offer and a letter containing acceptance, both of which were alleged to have been attached to and made part of the bond, the question whether there had been an actual alteration of the contract is for the jury where the evidence is conflicting as to whether one of the letters was attached to the bond when it was delivered to the obligee, and was torn from it by the latter's representative.    The question whether the alteration, if made, was a material one, was a question of law for the court.

In such a case where the papers taken together indicated that the obligor considered the letter torn off a material part of the contract, the bond is void and cannot be enforced against the surety, if it was torn off without the consent of the obligor, or without his subsequent ratification.

In an action against a contractor and his surety where the plaintiff seeks to recover a certain sum for labor required to be employed in consequence of the defendant's breach of contract, the plaintiff may recover the reasonable cost of the labor, and this may be ascertained by adding to the wages actually paid a proper amount for overhead expenses, provided that no profit on the wages is included.

*Practice, C. P.—Trial—Comment of counsel.*

Where an affidavit of defense has not been placed in evidence, an alleged impropriety in the manner in which it was prepared, is not a legitimate subject of comment by counsel.

460 ALLEN I. & S. CO. *v.* PROVIDENT I. & S. CO., Appel.

Statement of Facts—Charge of Court below. [63 Pa. Superior Ct.

Argued Nov. 24, 1915.   Appeal, No. 225, Oct. T., 1915, by defendant, from judgment of C. P. No. 4, Philadelphia Co., Dec. T., 1910, No. 2900, on verdict for plaintiff in case of Allen Iron & Steel Co. v. Provident Iron & Steel Co. and National Surety Company.   Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ.   Reversed.

Assumpsit on two bonds.   Before CARR, J.

The facts are stated in the opinion of the Superior Court.

At the trial the court refused binding instructions for defendant, the National Surety Company.

At the conclusion of the trial the following objection was made:

"Mr. White: I object to Mr. Carr's statement to the jury that the National Surety Company, the defendant, allowed the Provident Iron & Steel Company to prepare an affidavit of defense omitting any reference to the mutilation of the bonds, when there is no evidence that the National Surety Company had any knowledge whatever of the preparation of such affidavit of defense or connection with it, and I move to withdraw a juror.

The Court: The motion is overruled.   It is overruled on the ground that they were joint defendants, and that one was just as much interested as the other in whether or not the bonds were mutilated at the time the affidavit of defense was made.

(Exception noted for defendant.)   (6)

The court charged in part as follows:

On the part of the defendant, the surety company, they allege that this verdict should be in their favor because these bonds have been mutilated.   Therefore you will observe that there are two questions of fact for you to pass upon, or three; first as to the amount of money which has been expended by the plaintiff; and again you pass to the defendant, and in the first place you will consider the mutilation of the bonds, if there was mutila-

tion, and the next question of fact, and I presume the important question of fact, is what was the arrangement or agreement between Maloney and McCarty on the 18th of October, 1909.

Therefore we take up the first question. This was a contract, as you will recall, that was given to Wells to build both of these post offices. Wells in turn made advertisement for subcontractors, and you will remember that the Allen people said, "We didn't want the light work, but we took the whole contract, both the heavy and the light." They in turn came in contact with the Provident company, and then what follows?

[And this is one of the questions for you to pass upon. I speak now with regard to the alleged material alterations in the bond. Because if it was a material alteration your verdict, so far as this case is concerned against the surety company, would be in favor of the surety company. But what was the alteration? On January 23, 1909, the Provident company writes, "We propose to furnish, deliver and erect light and ornamental iron work for post office at Meadville, Pa., as per plans and specifications of J. Knox Taylor, for the sum of $1,163 as per schedule herewith attached," and they enclose the schedule. Now therefore what was the bond? Because was it a material alteration to tear off this? Because you have this, the answer, "We hereby accept your offer to furnish, deliver and erect, in time to avoid delay in, building, all ornamental and light iron work, except vertical ladders," etc. This was Meadville. So when you come to the contract itself there is the reference, "The principal has entered into a certain contract in writing, bearing date January 25, 1909, for furnishing, delivery and erection of ornamental iron work," and so forth, "according to plans and specifications." Therefore the first question is, even though these were torn off, was it a material demolition or destruction of this contract? In other words, the contract as it appears here is almost word for word as it appears in that offer. But

not only that, you will consider what according to Mc-Carty's testimony happened, when according to his statement Maloney tore this off. Did the surety company complain? Did McCarty complain? They accepted this contract, as it appeared. And does that bear on the question whether it was material or was not material? If it had been a material alteration would they have permitted this contract to have gone out and continued apparently in force? Would not they have said to Maloney, "You return that. You have altered it. We want it cancelled." I say their conduct in permitting it to still remain in existence bears upon the question of the materiality of taking that sheet of paper from it. Of course I express no opinion as to whether it was material or not. It is for you. But I say the acts of the parties at the time when the alleged destruction and alteration was made bears upon whether or not it was material in their minds. However, if you believe it was material, so far as the defendant surety company is concerned, your verdict should be for them. On the other hand, you may believe it was not material, and the contract was subsisting, for you will bear in mind when the Provident company failed to go on with the work, the plaintiff notified the surety company of their contract, and they did not deny its validity. So much for that question.] (1)

[Now with regard to the agreement which followed in 1909. In the first place, so soon as the contract was made, after January 25, 1909, there appears to have been some obstructions placed in the way of its performance by the Provident company. And when I use the word obstructions I do not mean to say it was wilful or intentional. At any rate, the first point they took a stand about was the furnishing of these anchors. Therefore the question arises, for what purpose were the anchors? Because you will observe from the contract it was not only for furnishing and delivery but erection. You have heard the witness testify as to what the anchors

were used for.  Were they a material part of the performance of the contract of the Provident company? You have heard what they were.  They were in order to bind in the ornamental work.  If they became absolutely necessary in the erection of this building, these anchors, of course they were in the line of the contract.]  (3)

Verdict and judgment for plaintiff for $1,275.  Defendant appealed.

*Errors assigned* were (1, 3, 4) above instructions quoting them;  (2) refusing to strike out the testimony of Wilfred C. Stoddard referred to in the opinion of the Superior Court;  (5) refusal to enter judgment for defendant n. o. v.;  (6) refusal to withdraw a juror.

*Thomas Raeburn White,* with him *S. Davis Page,* for appellant.—Binding instructions should have been given for appellant or judgment should have been entered in favor of appellant non obstante veredicto:  Neff v. Horner, 63 Pa. 327;  Smith v. Weld, 2 Pa. 54;  Getty v. Shearer, 20 Pa. 12;  Lilly v. Person & Riegel, 168 Pa. 219.

The testimony as to the mutilation of the bonds was not only wholly uncontradicted, but the bonds show on their face exactly what was done and fully corroborate the witness.  The bonds, at the request of counsel for the National Surety Company, were marked as original exhibits in the case, as well as the letters of January 23d torn therefrom.  No one can examine these papers without seeing that these letters were formerly attached by glue to the bonds, and had been torn off as described by the witness.

Of course the bonds have been in the possession of the plaintiff company ever since the letters were torn off, and the letters have been in the possession of the Provident Iron & Steel Company, defendant.

Under these circumstances there was nothing for the jury to decide on the question of whether the alteration

was made. Where evidence is uncontradicted, is not inherently improbable, is consistent with itself and especially where corroborated by written papers, a verdict contrary thereto would not be allowed to stand: Lonzer v. Lehigh Valley Railroad Co., 196 Pa. 610; Horn v. Hutchinson, 163 Pa. 435; Holland v. Kindregan, 155 Pa. 156.

In order to recover for labor expended by it, or employed by it, or paid for by it, in the doing of this work, plaintiff was bound to prove that the amounts paid were the reasonable cost of the labor: Murphy v. Taylor, 173 Pa. 317; Bethlehem Steel Co. v. Topliss, 249 Pa. 417.

*William A. Carr,* with him *W. Horace Hepburn* and *Sidney L. Krauss,* for appellee.

PER CURIAM, July 18, 1916:

This action of assumpsit was founded in part on two bonds in the penal sum of $500.00 each, whereby National Surety Company, the appellant, became bound to Allen Iron & Steel Company, the appellee, as surety for Provident Iron & Steel Company for the performance by the latter of two contracts it had entered into with the appellee—one relating to the Meadville post office, and the other to the Hagerstown post office. Each of these bonds was drawn for execution by Provident Company as principal and by the appellant as surety, but was only executed by the latter. For present purposes it is sufficient to refer to only one of them; it being understood that what is said applies as well to the other.

The bond contains this clause "Whereas, said principal has entered into a certain contract in writing, bearing date January 25, 1909, with the said obligee, for furnishing, delivery and erection of ornamental iron work for the new post office at Meadville, Pennsylvania, according to plans and specifications of J. Knox Taylor, architect, a copy of which is hereto attached, and is hereby referred to and made a part hereof." One of the

defendant's contentions on the trial was that there had been an intentional alteration of the instrument, in a material part, after its execution and delivery by the appellant and without the latter's consent. In support of this contention the defendants introduced evidence which may be summarized as follows: The Provident Company addressed and mailed to the appellee a letter dated January 23, 1909, which reads: "We propose to furnish, deliver and erect light and ornamental iron work for post office at Meadville, Pa., as per plans and specifications of J. Knox Taylor, for the sum of eleven hundred and sixty-three dollars ($1,163.00) as per schedule herewith attached. Same is to be paid for monthly as the work is erected." There was sent with this letter a schedule showing the prices for each part of the work therein specified, the sum of the items being the total contract price. On January 25, 1909, the appellee wrote to the Provident Company as follows,—"We hereby accept your offer to furnish, deliver and erect, in time to avoid delay in building, all ornamental and light iron work, except vertical ladders, for new post office, Meadville, Pa., per plans and specifications of J. Knox Taylor, supervising architect. Contract price, $1,163.50, payable in monthly installments for the work done, as estimated by architect. We will give you a $500.00 bond guaranteeing payment. You to furnish us with a $500.00 bond guaranteeing completion." Upon this paper, subscribed by the appellee, the other party endorsed its acceptance in these words:

> "Accepted
> "PROVIDENT IRON & STEEL CO.,
> "by McCarty."

Arthur F. McCarty, who was president of the Provident Company at the time, testified that when he applied to the appellant for the bond he delivered to that company, as evidence of the terms of the contract, for the performance of which the latter company was to become

surety, (1) a copy of the letter of January 23, (2) a copy of the schedule that accompanied it, (3) the letter of January 25th; that when the executed bond was handed to him by the appellant these three papers were securely attached to it by glue or mucilage; and that he exhibited the bond in this condition to P. M. Maloney, of the appellee company, who after examining it tore from it the letter of January 23d, and took the bond away, leaving the detached letter on McCarty's desk. The bond declared on and offered in evidence by the plaintiff does not contain this letter.

Two questions are raised by this evidence, (1) whether the letter of January 23d was physically attached to the bond when it was delivered to the appellee and was torn from it by the latter's representative; (2) whether this was such an alteration of the instrument sued on as would invalidate it. The first was a question of fact depending for its determination upon the credibility of oral testimony relating to a transaction with a deceased person and therefore was properly for the jury (see Colonial Trust Company v. Getz, 28 Pa. Superior Ct. 619, and cases there cited). The second was a question of law for the court: Stephens v. Graham, 7 S. & R. 505. In determining it, it is proper to view the instrument as if it were before us in the condition in which it is alleged to have been at the time it was submitted to the obligee for its acceptance or rejection. It recited as the foundation of the obligation the appellant intended to assume, a contract bearing date January 25th, which by its terms, consisted of an acceptance by the appellee of a proposal made by the Provident Company, which acceptance was accompanied by stipulations which did not appear in the proposal, and an acceptance by the Provident Company of the proposed contract as thus modified. The Provident Company's proposal was thereby merged in the completed contract, but it was not extinguished and rendered null for every purpose. On the contrary, it was not only competent and material evidence of what the

whole contract was (Holt v. Pie, 120 Pa. 425; Selig v. Rehfuss, 195 Pa. 200), but it was expressly preserved and made an element in the completed contract—an element that could not be ignored in the construction thereof. Viewing the instrument as a whole, in the condition it is alleged to have been, it is plain that the appellant deemed the accepted proposal a material part of the contract referred to in the recital as being attached to and made a part of the instrument, and was right in so doing. And the appellee must have known from the recital and the fact that the paper was securely attached to the bond that the appellant so deemed it. In other words, the instrument executed and tendered by the appellant was a bond conditioned for the performance by the Provident Company of a contract of which the accepted written proposal was a material part. If the appellee did not see fit to accept the security upon the terms which the recital and physical attachment of the papers therein referred to clearly showed the appellant intended to make the basis of its obligation, it should have rejected it or sought a modification of the terms. But it could not strike out what the appellant deemed, and was in law and in fact, a material part of the recited contract and then hold the appellant on the bond in its altered form. The rule of law as to the effect of the intentional alteration of a written instrument, in a material part, by one party without the consent of the other, is enforced with particular strictness in favor of sureties; as has been frequently declared a surety "has a right to stand on the very terms of his obligation and is bound no further." But entirely apart from the consideration that the obligor was a surety the conclusion is irresistible that the alleged alteration of the instrument was material, and if made and not ratified by the appellant, avoided the bond. It results from the foregoing discussion that the court was right in submitting to the jury the question whether the alteration was made but was in error in submitting to them the question of the

materiality of the alleged alteration. Therefore the fourth and fifth assignments of error are overruled and the first assignment is sustained.

In instructing the jury as to the obligation of the Provident Company to furnish and erect anchors, which are described in the testimony of Mr. Stoddart, the learned judge made the question turn on the jury's finding as to whether they were "absolutely necessary in the erection of this building." This left out of view the question whether the letter of January 23d and the accompanying schedule were attached to, and thus made part of the bond, at the time of its execution and delivery by the appellant. If they were a part of the contract, the expression "all ornamental and light iron work" would properly be construed to mean the iron work specified in the schedule, and therefore would not include the anchors. It is thus seen that the question as to the alleged alteration was highly important in the determination of the question presented by the third assignment. Being a question of fact, as we have already said, the instruction should have been accompanied by the qualification that if the letter of January 23d and the accompanying schedule were attached to the bond at the time of its execution and delivery, they became part of the contract and there could be no recovery for the cost of the anchors. Therefore the third assignment of error is sustained.

The appellant's counsel argue correctly that in order to recover for labor expended by it, or employed by it, or paid for by it, in the doing of the work it was compelled to do in consequence of the Provident Company's default, the plaintiff was bound to prove that the amount sought to be recovered was the reasonable cost of the labor. But we cannot agree with the learned counsel that there was not a word of evidence to show that it was the reasonable, usual or market price for the same. Wilford C. Soddart, the plaintiff's treasurer, testified that his company did a certain number of hours' "shop

work," which computed at 50 cents an hour amounted to a certain sum—the amount charged and sought to be recovered. On cross examination he admitted that his company did not pay the workmen 50 cents an hour, but that this sum was arrived at by adding to what was actually paid in wages to these men, a proper percentage of overhead expenses. We quote from his testimony: "The shop work is 50 cents an hour, which includes only the shop supervision and office expenses, things of that kind. Q.—From your experience in the business that is what it actually cost you? A.—That is the market price at that time. Q.—If you wanted to add a profit you had to add it above that? A.—Yes. We were doing that on all our work at that time." In view of the statement of the witness that the charge of 50 cents an hour did not include a profit on the wages paid the workmen, and that it was the market price at that time, the court committed no error in refusing the defendant's motion to strike out the testimony as to the items of labor. The second assignment is overruled.

With regard to the sixth and last assignment it is sufficient to say that if the affidavit of defense was in evidence the comments of counsel were not irregular or inappropriate. But as the affidavit of defense was not in evidence we think the appellant's counsel is right in saying that it was not the legitimate subject of comment.

Judgment reversed and venire facias de novo awarded.