## Jessup & Moore Paper Co. v. Bryant Paper Co.

*Contract — Breach of contract — Damages—Elements of damages—Overhead and depreciation charges—Evidence—Books of account.*

1. Where it appears in an action of *assumpsit* that plaintiff had agreed to manufacture and deliver goods to defendant, and that defendant had refused to accept them, and suit was brought to recover the profits plaintiff would have realized if the goods had been manufactured and delivered, the defendant is entitled to an opportunity to examine the plaintiff's books of account for the purpose of apportioning the overhead and other expenses of plaintiff's manufacturing business to all of its production and to the goods in question as if they had been manufactured.

2. In such a case, the plaintiff cannot successfully contend that such an examination might disclose business secrets to a competitor.

Rule to show cause why plaintiff should not permit its books and records, showing general overhead and depreciation accounts, to be examined by the accountants named by the court. C. P. No. 5, Phila. Co., March T., 1922, No. 364.

*Charles S. Wesley*, for plaintiff; *Thomas Raeburn White*, for defendant.

MARTIN, P. J., May 25, 1926.—By agreement, this case is being tried by the court without a jury. It has already been decided that there was a breach by defendant of the contract with plaintiff. The question now before the court is the amount of damages to which the plaintiff is entitled.

The contract provided that plaintiff should manufacture and deliver, and the defendant would accept, a certain amount of soda pulp at prices to be fixed in the manner provided by the contract. After some of the pulp had been delivered, the defendant notified plaintiff that it would not accept any further deliveries of soda pulp, and plaintiff, regarding this notice as a breach of the contract, manufactured no more pulp for delivery to plaintiff, and instituted this suit to recover the profits it would have realized if the pulp had been manufactured and delivered.

During the period covered by the contract for delivery plaintiff manufactured other soda pulp and engaged in manufacturing paper.

Under the terms of the agreement of the parties providing for this trial without a jury, it was stipulated that the defendant should have the right to examine the books and accounts of plaintiff, with the aid of Whann & Company, public accountants, to determine the damages suffered by plaintiff. Pursuant to this agreement, an examination was made of certain books of account to fix the cost of production of the soda pulp, but plaintiff was denied access to accounts showing general overhead and depreciation charges.

There is testimony that the cost of production which involves the profits plaintiff would have made if the soda pulp had been manufactured cannot be ascertained without taking into consideration the overhead and depreciation accounts and apportioning these accounts with the entire production of plaintiff, including the unmanufactured pulp that was not manufactured because defendant had refused to accept it.

Plaintiff contends that only such items of expense or cost as would have been enlarged or reduced had the contract been performed and the soda pulp manufactured can be taken into account in determining its cost of manufacture; but defendant claims that all overhead, administration expense and depreciation should be taken into account to determine what the cost would have been to plaintiff of manufacturing the soda pulp.

Although the soda pulp was not manufactured, plaintiff is claiming as damages profits it would have made if the soda pulp had been manufactured. The overhead and depreciation accounts may not have been changed by the

increased manufacture, yet the effect of the increased manufacture would have been to lessen the cost of manufacture of the remaining production by plaintiff. If the soda pulp had been manufactured, the just method of determining the cost of production of the company would have been to apportion all overhead and depreciation to entire production, including that manufactured for the defendant. It is equitable, under the circumstances, to afford defendant an opportunity to examine the books of account for the purpose of apportioning the overhead and other expenses of the manufacturing business of plaintiff to all its production and the soda pulp in question as if it had been manufactured.

It is contended such examination may disclose business secrets to a competitor, but the plaintiff has placed itself in this position by the terms of the agreement and not manufacturing the pulp after the contract was broken by defendant, and in relying upon the loss of profits as the basis of the damages occasioned by the breach.

So far as they relate to the cost to plaintiff of manufacturing soda pulp and loss of profits caused by the breach of contract, the defendant, through the accountant, should be permitted to make the examination demanded.

No decisions directly ruling the question at issue have been cited, but there are cases which by analogy may be regarded as authority for the conclusion reached.

In the Tremolo Patent, 23 Wallace, 518, which involved the infringement of a patent, it was said by the Supreme Court of the United States: "We cannot see why the general expense incurred by the defendants in carrying on their business, such expense as store rent, clerk hire, fuel, extra porterage, etc., did not concern one part of their business as much as another. It might be said that the selling of a tremolo attachment did not add to their expense, and, further, no part of this expense should be deducted from the price obtained for such an attachment. This is, however, but a partial view. The store rent, clerk hire, etc., might, it is true, have been the same if that single attachment had never been bought or sold. So it is true that the general expense of their business would have been the same if, instead of buying and selling one hundred organs, they had bought and sold only ninety-nine. But will it be contended that because buying and selling of one additional organ involved no increase of the general expense, the price obtained for that organ above the price paid was all profit? Can one part of the whole number sold be singled out as justly chargeable with all the expenses of the business? Assuredly not. To begin with, a tremolo attachment is a single piece of mechanism, though composed of many parts. It was bought and sold as a whole by the defendants. It might be said the general expenses of the business would have been the same if any one of these parts had been absent from the number sold. If, therefore, in estimating profits, every part is not chargeable with a proportionate share of the expenses, no part can be. But such a result would be an injustice that no one would defend. We think it very plain, therefore, that there was no error in the rule adopted for the ascertainment of the profits made by the defendant out of their infringement of the plaintiff's patent."

In Manufacturing Co. v. Cowing, 105 U. S. 253, also a case involving the infringement of a patent, the court said: "It is true there is some evidence to show that the organs could be made for the sum named, but it is clear to our minds that many things were excluded from the sum which ought to have been included. All the material and labor of men might have been taken into account, but there is nothing for the use of the tools, machinery, power and

other things employed in the manufacture." The sum claimed was also criticised as not containing "any allowance for general expenses." In Detroit Fireproofing Tile Co. v. Vinton Co., 157 N. W. Repr. 8 (a Michigan case), it was held that, in estimating the cost of performing a contract, overhead expenses should have been included.

In Morrow v. Missouri Pacfic R. R. Co., 123 S. W. Repr. 1034, which was a case involving loss of profits, it was held that "profits" means net earnings "and relates to any excess which remains after deducting from the returns the operating expenses and depreciation of capital, and also, in a proper case, interest on the capital employed."

In French v. Pullman Motor Car Co., 242 Pa. 136-139, suit was instituted to recover the loss of commissions which plaintiff would have made had defendant not broken the contract. It was held that the measure of damages was not the commissions, but plaintiff's net earnings, which were the commissions, less all the expenses of carrying on the business—"cost of employees, cost of advertising, cost of keeping the cars in the repair-shop and garage, and the cost of everything incidental to the business"—that is, the net profits if he had continued in business under the contract.

In Nusbaum v. Insurance Co., 276 Pa. 526-534, a policy of insurance covered loss of profits and fixed charges due to the displacement of a power plant and power machinery, causing cessation of the plant in whole or in part. It was held that "fixed charges" did not include loss of interest, wages of a superintendent or of employees, and "that in any proper statement of an account the whole loss of profits and interest and wages paid would have to be considered, so that a specific allowance for them would necessarily duplicate defendant's liability."

In Allen Iron & Steel Co. v. Provident Iron & Steel Co., 63 Pa. Superior Ct. 459-469, it was held that the measure of damages for completing work under a contract was the actual cost of doing the work, plus a proper percentage for overhead expense.

Reason and authority confirm the view that the defendant is entitled to the examination of the books and accounts of the plaintiff requested.

And now, to wit, May 25, 1926, rule absolute.