# C. P. Mayer Brick Company *v.* D. J. Kennedy Company, Appellant.

*Contract—Sale—Breach of contract—Measure of damages.*

In an action to recover damages for breach of contract it appeared that plaintiff and defendant, two corporations, entered into a written contract by which the plaintiff, a manufacturer of bricks, contracted to sell to the defendant 5,000,000 bricks during a particular year. Under the contract the plaintiff gave to the defendant "the sole and exclusive right to purchase and market its entire output" for the year and the defendant agreed to purchase 5,000,000 bricks during the year, as rapidly as the same could be produced. It was further provided that whenever the plaintiff had in stock more than 1,500,000 bricks for which no orders had been received from the defendant, the plaintiff should have the option of selling the excess to other persons without reference to the contract, so as to keep its plant in operation, provided that before selling it would notify the defendant. All bricks thus sold were to be deducted from the 5,000,000 bricks agreed to be manu-

factured. It appeared that the plaintiff expended a large sum of money on its plant to prepare for filling the contract, and was ready and willing to manufacture and could have manufactured all the brick called for under the contract, and it continuously called upon defendant to order out brick, but the latter failed to do so to the amount of about half of the whole number of brick. *Held,* (1) that the defendant could not limit its liability to the number of brick which the plaintiff had actually manufactured; (2) that the plaintiff was entitled to recover the profit on the number of brick represented by the difference between 5,000,000 and the number which the defendant had taken and paid for; (3) that the measure of damages was compensation to be ascertained by deducting the cost of manufacturing and delivery from the contract price.

Argued Oct. 24, 1910. Appeal, No. 69, Oct. T., 1910, by defendant, from judgment of C. P. No. 4, Allegheny Co., Fourth Term, 1907, No. 406, on verdict for plaintiff in case of C. P. Mayer Brick Company v. D. J. Kennedy Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Assumpsit on breach of contract.

At the trial the jury returned a verdict for plaintiff for $4,468.33.

On motion for judgment for defendant non obstante verdicto, SWEARINGEN, P. J., filed the following opinion:

On March 1, 1906, the plaintiff and the defendant made a written contract for the sale and purchase of 5,000,000 brick, during the year ending March 1, 1907. During said period, the defendant ordered and gave shipping directions for but 1,323,977 brick, and it was entitled to a credit of 85,045 additional, making an aggregate during the contract year of 1,409,022 brick. On March 1, 1907, the plaintiff had manufactured and had in stock 1,473,900 brick, which, after some controversy, the defendant took and for which it has paid. Thus the total amount of brick, which the defendant received under said contract and for which it has paid, is 2,822,922 brick.

The remainder, being the difference between 5,000,000 and 2,822,922, or 2,117,078, were not manufactured. The plaintiff alleged that it had not manufactured these brick by reason of the acts of the defendant in violation of said contract, and it sought in this action to recover the profit which it is alleged it would have made, if the defendant had observed the obligations which the contract imposed upon it. The defendant denied that it was under any obligation to order and give shipping directions for the brick, which the plaintiff had not manufactured.

At the trial, we instructed the jury in general terms that, if it was satisfied from all the evidence as to the alleged acts of the defendant, the plaintiff could recover, and that the measure of damages was the loss of profit which was shown. These two questions, the right of plaintiff to recover, and the measure of damages, were the only ones argued upon these motions. Our instructions to the jury were general, and we now deem it proper to state the reasons for the conclusions which we then reached.

The question which lies at the foundation of the controversy is: Was the plaintiff, under the terms of said contract, entitled to recover at all? The portions of said contract, which are material to this issue, are the following:

"Whereas, said first party is engaged in the manufacture of building brick and the said second party is engaged in the sale of Builder's Supplies, including brick, and whereas, the said first party is desirous of having its entire output of Face Brick purchased and handled by one party, and as the second party is willing to undertake the purchase and sale of said output of brick.

"Now this agreement witnesseth: That the said first party for the consideration and upon the terms hereinafter recited, hereby grants to said second party the sole and exclusive right to purchase and market its entire output of first quality, wire cut and repress building brick for and during the term of one year from the first day of

March, 1906, and the said second party hereby agrees to purchase not less than five million (5,000,000) brick per year during the continuance of this agreement, as rapidly as the same can be produced by the first party with reasonable diligence, first party agrees to manufacture and to load same on cars at Bridgeville when ordered by said second party, provided, however, that whenever and as often as the said first party has in stock more than one million five hundred thousand (1,500,000) brick for which no orders have been received from the second party, the said first party shall have the option of selling said excess brick to other persons on its own account without reference to the terms and conditions of this contract so as to keep its plant in continuous operation, provided that before the selling he shall duly notify second party. All brick thus sold by first party to be deducted from the five million (5,000,000) brick agreed to be manufactured by it as aforesaid, it being mutually agreed that such sales shall not discharge any obligations of either party to this contract, except as to the sales so actually made by first party."

The object of the plaintiff in making this contract was that it might have but one customer for its output of certain brick, and presumably be thereby relieved from the necessity of employing salesmen and from the expense of advertising. The purpose of the defendant was to obtain control of the output of the plaintiff's plant. The plaintiff therefore granted to the defendant the "sole and exclusive right to purchase and market its entire output" of certain brick, and the defendant agreed to "purchase not less than 5,000,000 brick," during the year. The meaning of this language is that the plaintiff undertook to produce at least 5,000,000 brick, and that the defendant undertook to receive at least 5,000,000 brick, for the words are "not less than 5,000,000." The parties contemplated that these brick were to be manufactured and taken from time to time throughout contract year, for they said that these brick were to be taken "as rapidly

as the same can be produced by the first party with reasonable diligence.'' The parties undoubtedly understood the circumstances. They undoubtedly considered that the output of plaintiff's plant would be substantially 5,000,000 during the year, not during one month, nor during six months, but during twelve months. They also undoubtedly considered that the plaintiff could make substantially that amount of brick during the year, not during one month, nor during six months, but during the twelve months. The brick were to be manufactured by the plaintiff, throughout the year, and they were to be marketed by the defendant throughout the same period; and the parties therefore agreed that 5,000,000 was about the number. It seems to us that this is the fair meaning of the language last quoted. We cannot agree with the defendant, that this language modified its express agreement to purchase 5,000,000, so that the fair meaning of the contract is that the defendant undertook to purchase 5,000,000 brick if the plaintiff manufactured them. This is not the natural meaning of the words used in the contract. It does not say that the defendant will purchase, if the plaintiff manufacture 5,000,000 brick. No such expressed condition is attached to the defendant's undertaking. And the defendant seems to realize this because it strongly urges that the proviso, following, shows that the construction for which it contends is the correct one. And this brings us to a consideration of the proviso.

The defendant contends that by this proviso the parties agreed that the limit of the plaintiff's duty to keep a stock on hand should be 1,500,000 brick, from which the defendant might order, and that the defendant was under no obligation to order the brick as rapidly as they were manufactured, because if it did so there never could be a stock of 1,500,000, and that therefore the clause of the contract, to which reference has been made, is meaningless. It is true that every word of the contract must be given effect in its construction, if possible; and if this

proviso means what the defendant contends it does mean, then the defendant's construction of the contract would be very greatly strengthened.

There is certainly no express obligation, on the part of the plaintiff in this proviso, to keep a stock of brick on hand to any extent. On the contrary, the express provision is that the plaintiff should have the "option of selling" the excess of 1,500,000, "so as to keep its plant in continuous operation," and then only on condition that it should have first notified the defendant of its intention so to do. In other words, the parties contemplated that there might be periods during the contract year when the market for such brick might be dull. If so, if the plaintiff should have a stock of 1,500,000, then, in order to remove congestion of its storage capacity, it might, if it so chose, and only if it so chose, sell the excess to other parties. But the plaintiff was not given this right absolutely even then. It could only do so after having given notice to the defendant. The plaintiff was not entitled to sell the excess; it assumed no obligation to do so. It only had the option to do so, which it might or might not exercise, as the market or other conditions might prove advantageous to it; but not even then without first giving notice to the defendant. It seems to us that this proviso had no reference whatever to the obligations which the defendant assumed. The contract says the stipulation was made "so as to keep its (the plaintiff's) plant in continuous operation." And this made clear by the final clause of the proviso, which expressly declares that all such sales of excess shall be deducted from the 5,000,000, which the defendant agreed to purchase, no matter what the price. This was to aid the plaintiff in relieving any congestion of its storage, that might happen through the failure of the defendant, but in no way relieved the defendant from its obligation. How, therefore, this proviso can be interpreted so as to aid the construction that the defendant did not undertake to purchase 5,000,000 brick during the contract year, but only such amount as

the plaintiff might manufacture, we are at a loss to understand.

If the parties had intended to engage that the defendant should purchase 5,000,000 if, and only if, the plaintiff manufactured them, how easy it would have been to have said so in plain and unmistakable language. . In our opinion the construction for which the defendant contends, is not warranted by the language which the parties used and would nullify the natural meaning of that language.

It was in evidence that the plaintiff, in order to prepare for filling this said contract, expended some $10,000 in increasing the capacity of its plant. It was in evidence that the plaintiff was ready and willing to manufacture, and could have manufactured, the whole amount of brick called for by the contract and that plaintiff duly notified the defendant of all this from time to time. It was also in evidence that the plaintiff was continuously calling upon the defendant to order out brick, because the plaintiff's plant was becoming overcrowded by reason of the failure of the defendant to remove the brick in stock. It is true the defendant did not expressly refuse to take the brick, but nevertheless, it did not take them. It only took about 1,400,000 during the year, and the effect upon the plaintiff and upon its plant was just the same as if the defendant had expressly refused to take the brick. We are of the opinion that there was sufficient evidence to show that the plaintiff was prevented from manufacturing the whole amount of brick, for which the contract called, by reason of the acts and omissions of the defendant; and we are of opinion that, under a proper construction of the contract and under the evidence, a recovery by the plaintiff can be sustained.

What, then is the measure of damages. Compensation, of course, is the rule. And compensation, in such a case as this, is to be ascertained by deducting the cost of manufacture and delivery from the contract price. This is the rule adopted in the case of a contract for min-

ing and delivery of coal: Scott v. Kittanning Coal Co., 89 Pa. 231.

The same rule was adopted in the case of Puritan Coke Co. v. Clark, 204 Pa. 556.

There is no reason for a different rule in the case of a contract for the manufacture of brick running throughout a year. There is no evidence that the plaintiff could have obtained a market for these brick, especially when it found that, as the year was expiring, the defendant was not likely to take the entire output of its plant.

Judgment n. o. v. refused.

*Error assigned* was in overruling motion for judgment non obstante veredicto.

*J. McF. Carpenter,* with him *George N. Chalfant,* for appellant, cited: Arnold v. Blabon, 147 Pa. 372; Burton v. Miller, 227 Pa. 143; Fleming v. Beck, 48 Pa. 309; Sharpsville Furnace Co. v. Snyder, 223 Pa. 372.

*R. B. Petty,* with him *John O. Petty,* for appellee, cited: Bigham v. Ry. Co., 223 Pa. 106; Scott v. Kittanning Coal Co., 89 Pa. 231; Imperial Coal Co. v. Port Royal Coal Co., 138 Pa. 45; Puritan Coke Co. v. Clark, 204 Pa. 556; Smith v. Kaufman, 30 Pa. Superior Ct. 265; Allegheny Valley R. R. Co. v. Steele, 11 W. N. C. 113; Hinckley v. Steel Co., 121 U. S. 264 (7 Sup. Ct. Repr. 875); Unexcelled Fire-Works Co. v. Polites, 130 Pa. 536.

PER CURIAM, January 3, 1911:

The judgment is affirmed on the opinion of Judge SWEARINGEN.