## French v. Pullman Motor Car Co., Appellant.

*Contracts—Contracts under seal—Waiver of covenants—Rescission—Breach of covenant—Assumpsit—Case for jury—Measure of damages.*

In an action to recover damages for the alleged breach of a contract, under seal, constituting the plaintiff the agent for one year for the sale of defendant's automobiles in a designated territory, it appeared by the terms of the contract that the plaintiff had the privilege of renewal for another year. Plaintiff complained that defendant had violated the contract by refusing to deliver all the cars, and by refusing to renew the contract though requested so to do. Defendant alleged that the contract had been rescinded by parol, and offered evidence that the cars delivered to plaintiff had not been paid for in the manner provided in the contract. Plaintiff conceded that he had not paid for the cars in the manner provided in the contract but contended that certain covenants of the contract as to the payment for cars had been mutually waived by parol, but that in other respects the contract remained in force until the time of the alleged breach. *Held,* the question as to whether the contract had been entirely abandoned or whether there had been a waiver by parol of certain covenants thereof, was properly left to the jury.

Argued April 21, 1913. Appeal, No. 164, Jan. T., 1913, by defendant, from judgment of C. P. York Co., Aug. T., 1912, No. 90, on verdict for plaintiff in case of L. E. French v. Pullman Motor Car Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER and MOSCHZISKER, JJ. Affirmed.

Assumpsit to recover damages for breach of a contract under seal. Before WANNER, P. J.

From the record it appeared that defendant company was a manufacturer of automobiles, having its factory at York, Pa. On October 28, 1908, defendant and plaintiff entered into a written contract under seal, by which plaintiff was constituted defendant's sole agent for the sale of automobiles of defendant's manufacture in the

City of Philadelphia and its vicinity during the continuance of the contract. Defendant agreed to sell to plaintiff fifteen designated cars; to supply, by further sales to plaintiff, the requirements of the trade within the territory mentioned, and to refer to plaintiff all inquiries for cars originating from sources within plaintiff's territory. A deposit of fifty dollars per car for each of the fifteen cars mentioned in the contract was to be made at the signing of the contract, and fifty dollars was to be deposited for each car thereafter ordered by plaintiff, before the shipment thereof and the balance of the purchase price of each car was to be paid by plaintiff "as and when such car is shipped" by the defendant "with sight draft attached to bill of lading therefor." It was further agreed that cars should be sold by plaintiff only at prices to be fixed by defendant, that for breach of any of the conditions of the contract, on the part of plaintiff, all of plaintiff's deposits on account of the purchase price of cars, should be forfeited, and the contract should be abrogated. The contract was to continue in force until September, 1909, but it was expressly stipulated that the plaintiff should have the option of "renewal of this contract for a further period of one year, provided that twenty-five or more cars be purchased with the usual deposit on the same."

The evidence showed that the stipulations of the contract providing that cars should be shipped on plaintiff's individual order and that a sight draft attached to the bill of lading should be paid by plaintiff, were disregarded by both parties. Instead, cars ordered by plaintiff were consigned to S. E. Bailey, the president of defendant company, at Philadelphia; Mr. Bailey was charged with the price thereof by defendant, and paid for them from time to time with his own money; Mr. Bailey retained title to the cars until he was paid the purchase price by plaintiff.

There was evidence that not only was this the course of dealing from the time of the execution of the con-

tract in 1908, but that it had been the course of dealing between the parties under a former contract, made in 1907, which expired about the time of the execution of the contract of 1908.

On July 12, 1908, plaintiff wrote to defendant enclosing a certified check for $1,200, as a deposit under the stipulations of the contract, and notified defendant that he desired a renewal thereof. His check was returned in a letter in which the president of plaintiff company refused a renewal of the agency, and charged plaintiff with violations of the contract of 1908, declaring that plaintiff had thus forfeited his right to a renewal of the contract. It appeared that plaintiff had not paid the deposits on the cars consigned under the contract, or any sight drafts.

As to the effect of the failure of the parties to follow the course of dealings prescribed by the contract, the court charged the jury as follows:

"As to the plaintiff's failure to pay the $750.00 directly to the company, and his failure to pay the sight drafts, you will remember that these are the very matters that the testimony indicates were suspended and waived by the action of these parties in agreeing to a different course of dealing and to a different manner of transacting their business.

"If you find from the evidence that it was agreed between Mr. French (the plaintiff) and Mr. Bailey, with the consent of the company, that, instead of paying the deposit, the cars should be charged to Mr. Bailey, then this failure does not affect the matter, and the failure to make the payments as stipulated for, is no defense. But if, on the other hand, you should find that that stipulation of the contract, or the whole contract, including it, had been abandoned by the parties, and that they had substituted something else, then Mr. French would not have the right of renewal."

As to the measure of damages, the court charged the jury as follows:

"The commissions on the cars to which Mr. French was entitled are fixed by the contract, and they are easily calculated. After you have ascertained the number of cars, if any, on which he was refused a delivery, you may ascertain the amount of the commissions. (3)

"But that would not be the measure of damages. His net profits, after deducting all the expenses of carrying on the office,—cost of employees, cost of advertising, cost of keeping the cars in the repair shop and garage, and the cost of everything incidental to the business,— would be the measure of damages. It would only be Mr. French's net profits, after deducting all those matters. That could be considered as some measure of the profits which he might have made; but there are other things than those to be considered. Mr. Longstreth testified that the year 1910 was a very poor year in the automobile trade, and that he lost money. We have his testimony that the business was very slack in 1910, and there is no assurance that the plaintiff's business success would have gone on without interruption. Many things might have interfered by which the profits would have been affected; such as the cost of employees, the general costs of the business, etc. You cannot tell what a man's profits are going to be in any year. Mr. Longstreth testified to the number of cars that he sold. The Longstreth Company received sixty-two cars from the Pullman Motor Car Company, and they were the agents who succeeded Mr. French.. They got sixty-two cars, four of which remained unsold at the end of the year. They therefore sold fifty-eight cars, but you will recollect that they had a very much larger selling force than the plaintiff had. You could hardly determine how large a number Mr. French could have sold with his force. We call your attention to these uncertainties.

"In approaching the question of damages, if you conclude to award damages to the plaintiff, you must consider all these matters. If you consider the plaintiff entitled to damages, you will award him such a sum as the

evidence will fairly justify you in allowing him as his net profits, if he had continued in business at that place, down to the time when the new contract would have expired."

Verdict for plaintiff for $15,150.00, and judgment thereon.  Defendant appealed.

*Errors assigned* were various instructions to the jury, the refusal of the court to direct a verdict for defendant and to enter judgment for defendant non obstante veredicto.

*Henry C. Niles,* with him *George S. Schmidt* and *M. S. Niles,* for appellant.

*William A. Carr,* with him *V. K. Keesey* and *Jere Black,* for appellee.

PER CURIAM, June 27, 1913:

The plaintiff sued to recover damages for the breach of a contract, under seal, constituting him the agent for the sale of the defendant's cars in Philadelphia and vicinity for one year with the privilege of renewal for another year.  He alleged his compliance with the contract and the failure of the defendant to deliver a part of the cars ordered and to renew the contract as agreed. The terms of the agreement, in relation to the manner by which payment was to be made for the cars, was not carried out by either of the parties and the main questions of fact at the trial were whether the agreement had been abandoned and an oral agreement substituted therefor, or whether there had been merely a waiving by parol of a part of the original covenant.  These questions were submitted by a charge that is a model of clearness and accuracy and we find nothing in the voluminous record that calls for a reversal of the judgment.

The judgment is affirmed.