DETROIT FIREPROOFING TILE CO. v. VINTON CO.

1. CONTRACTS—PROFITS—DAMAGES.

Profits, to be recoverable in an action for breach of contract, must have been within the contemplation of the parties when they entered into the agreement. They must be of such a certain and probable nature as not to be speculative or dependent on doubtful contingencies, and the amount thereof must be provable with reasonable certainty.

2. SAME—EVIDENCE.

Proofs examined and *held*, not to warrant the submission of the question of plaintiff's damages to the jury, based on evidence of lost profits.

Error to Wayne; Barton, J., presiding. Submitted October 18, 1915. (Docket No. 45.) Decided March 30, 1916.

Assumpsit in justice's court by the Detroit Fireproofing Tile Company, a corporation, against the Vinton Company, a corporation, for breach of contract of sale. From a judgment for plaintiff defendant appealed to the circuit court. Judgment for plaintiff for an insufficient amount. Plaintiff brings error. Affirmed.

*George W. Bates,* for appellant.

*Sherman D. Callender,* for appellee.

This suit originated in the justice's courts of the city of Detroit. It appears that on the 13th day of June, 1910, the plaintiff entered into a written contract with the defendant to furnish and erect complete the masonwork as shown on the plans and called for in the specifications for a factory building for the

Breeze-Detroit Carbureter Company, to be located on Campbell avenue, for the sum of $1,875. The contract is a long one, and among other things requires the subcontractor (plaintiff) to supply architects and superintendent—

"with all desired means and help for safely inspecting the various parts of the work, and the subcontractor shall render every necessary and suitable assistance to the architects at all times when required to take measurements, levels, etc., on work or grounds as the case may be. * * *

"To save the owner and general contractor [defendant] harmless from all damage that they may sustain or be subjected to by reason of any negligence on the part of or the acts of the subcontractor [plaintiff] or any of subcontractor's employees, laborers, or servants, or by reason of any breach on the part of the subcontractor of any of the provisions of the agreement. * * *

"The subcontractor [plaintiff] shall not be entitled to any payment without a certificate signed by the architects and superintendent stating that such sum is due. * * *

"Neither payment made on the work during its progress nor occupancy of the building by the owner, whether partial or entire, shall in any case be construed as an acceptance of the same. * * *

"The subcontractor [plaintiff] shall procure and deliver to the general contractor a surety company's bond satisfactory to the general contractor, * * * conditioned for the furnishing of material and performing the labor on said building free from all liens. * * *

"The subcontractor agrees to pay his proportion of the insurance, watchman, permits for occupying the streets, and water tax; also to do all work called for both in the printed and typewritten general conditions which pertains to the subcontractor's part of the work."

Upon the trial it appeared that this written contract was entered into by the parties before the de-

fendant, the general contractor, had secured its own contract, and circumstances thereafter arose which made it impossible to erect the building. On September 1, 1910, the defendant wrote the plaintiff to the effect that another company had purchased the property on which the Breeze-Detroit Carbureter Company intended to build, and requested plaintiff to remove such material as plaintiff already had upon the ground. In the meantime plaintiff had entered upon the execution of the contract. Complying with the request of defendant, plaintiff removed the material from the ground and rendered a bill to the defendant for the sum of $150. This bill the defendant declined to pay, but offered in adjustment of the matter the sum of $75, which was refused. After a lapse of more than two years this suit was brought in the justice's courts. Plaintiff filed the following bill of particulars:

```
Contract price ....................... $1,875.00
Estimate of actual cost of construction.   1,453.51

Damage .....................................   $421.49
Additional items of damage after cancellation
    by Vinton Company:
Teaming materials, which had been delivered,
    from job .........................................    24.75
Cost of labor in reloading materials for trans-
    portation from job ...........................     4.03
Surveying ......................................    10.00
Blocks used and not returned ...............     5.20

    Total ........................................   $465.47
```

From a judgment in the sum of $230 rendered in the justice's court, defendant appealed to the circuit court, where proofs were taken at large.

Plaintiff introduced evidence tending to show the number of concrete blocks required to carry out the contract, the shop cost of each block, the cost of delivering the same to the works, and the cost of laying them up. Testimony was likewise introduced on its behalf tending to show that various items entering into

this contract would have been performed by other sub-contractors under it, and that those subcontracts could have been let at certain specified sums. Adding these sums to the cost of manufacturing, hauling, and laying up the concrete blocks, plaintiff arrived at a total estimated cost of the building of $1,453.51. Deducting this amount from the contract price, $1,875, leaves a balance of $421.49, which plaintiff claimed the right to recover as profits, or damages, by reason of the breach of the contract on the part of the defendant. At the close of the proofs a motion was made by the defendant that a verdict be directed in favor of plaintiff for the amount $43.98, being the amount of plaintiff's bill of particulars, less the sum of $421.49, the estimated profits. After argument defendant's motion was granted, and judgment was entered in accordance therewith.

Plaintiff now reviews the case in this court, claiming that under the proofs it was entitled to go to the jury and have the jury assess its damages under the evidence.

BROOKE, J. (*after stating the facts*). The difficulty in the case arises in determining the measure of damages to be applied, it being conceded that plaintiff is without fault, and the breach of contract on the part of the defendant entitled plaintiff to recover whatever damages it may lawfully show. It is the contention of the plaintiff that under the evidence this loss was shown with such reasonable certainty as the law requires, and counsel cite in support of that position the following cases: *Loud* v. *Campbell*, 26 Mich. 239; *Leonard* v. *Beaudry*, 68 Mich. 312 (36 N. W. 88) ; *Fell* v. *Newberry*, 106 Mich. 542 (64 N. W. 474) ; *Barrett* v. *Veneer Works*, 110 Mich. 6 (67 N. W. 976) ; *Industrial Works* v. *Mitchell*, 114 Mich. 29 (72 N. W. 25).

On behalf of defendant the following cases are cited:

*Allis* v. *McLean,* 48 Mich. 428 (12 N. W. 640) ; *Talcott* v. *Crippen,* 52 Mich. 633 (18 N. W. 392) ; *Stevens* v. *Yale,* 113 Mich. 680 (72 N. W. 5) ; *Quay* v. *Railway Co.,* 153 Mich. 567 (116 N. W. 1101, 18 L. R. A. [N. S.] 250) ; and *Herron* v. *Raupp,* 156 Mich. 162 (120 N. W. 584).

The general rule deducible from the authorities is stated as follows (13 Cyc. p. 36) :

"In order to recover profits in case of a breach of contract, such profits must have been within the contemplation of the parties at the time that the contract was made, and, where such profits do not enter into the contract itself, they will be denied. Anticipated damages, different from those which would ordinarily be sustained, are not always recoverable, but will only be awarded when in view of special circumstances they may be regarded as the natural and direct result of the breach, and are not problematical, but are capable of being foreseen and of being estimated with reasonable accuracy. In all cases the damages claimed should be capable of being definitely ascertained. Where the damages claimed are so speculative and dependent upon numerous and changing contingencies that their amount is not susceptible of actual proof with any reasonable degree of certainty no recovery can be had."

See, also, 8 Am. & Eng. Enc. Law [2d Ed.], p. 622.

The question still remains whether plaintiff produced evidence from which the jury might estimate its loss with reasonable accuracy.

The record discloses that in estimating the cost no account was taken of the overhead expenses, such as salaries of president, manager, superintendent, bookkeeper, stenographer, etc. All these administration expenses were not included in plaintiff's estimate as to the cost of the job, nor in said estimate was there included any allowance for the expenses and proportionate share which under the contract the plaintiff was obliged to bear for insurance, watchman, permit for

occupancy of streets, and water tax. It further appears that plaintiff intended to perform a portion of the work under its contract by subletting the same to subcontractors. Among the items so to be performed were the following: Excavation estimated by plaintiff to cost $90; concrete floor estimated by the plaintiff to cost $520; coal chute estimated by plaintiff to cost $5; and sewer estimated by plaintiff to cost $45. The record does not disclose that subcontracts were let by the plaintiff for these various portions of the work, but it does show that plaintiff's general manager, Raymond, gave the various items above set forth, and testified that, in his opinion, the sums mentioned would have represented the cost of doing the various jobs specified.

After a careful consideration of the entire record, and the cases in our own court bearing upon this question, we are of opinion that the plaintiff failed to introduce testimony from which the jury could intelligently and with reasonable accuracy determine the actual loss of profits (damages) suffered by the plaintiff by reason of the unwarranted breach of the contract by defendant.

The judgment will stand affirmed.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, STEERE, and PERSON, JJ., concurred.