# Meyer *v.* Quaker City Sign Co., Inc., Appellant.

*Contracts—Terms of payment—Breach of contract—Damages.*

In an action of assumpsit for goods sold and delivered, it appeared that the seller refused to perform a contract with the buyer, unless payment was made on terms more favorable to him than those provided in the contract. The buyer thereupon refused to take the goods, and purchased others at a higher price and on harsher terms than those asked by the seller. Subsequently the seller delivered certain other goods to the buyer, for which the latter refused to pay, claiming that it suffered damage by virtue of the breach of the prior contract with the plaintiff, and advancing the same as a set-off.

Under such circumstances, the seller was liable only for the damage which the buyer would have suffered had it accepted the terms of the contract, which was a loss of interest. The buyer could not claim, as a set-off, the difference between the price named in the original contract, and the price at which it subsequently purchased the goods.

Argued October 18, 1923. Appeal, No. 270, Oct. T., 1923, by defendant, from judgment of Municipal Court of Phila. Co., April T., 1923, No. 598, in favor of plaintiff in case tried by court without a jury in suit of William Meyer v. Quaker City Sign Co., Inc. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Assumpsit for goods sold and delivered. Before KNOWLES, J., without a jury.

The facts are stated in the opinion of the Superior Court.

The court entered judgment in favor of plaintiff in the sum of $461.43. Defendant appealed.

*Error assigned* was refusal of defendant's motion for judgment non obstante veredicto.

*Joseph W. Henderson,* and with him *Francis Rawle,* for appellant.—The correct rule of damages is the difference between the contract price and the market price of the goods at the time and place of delivery: Iron Trade Products Company v. Wilkoff Company, 272 Pa. 172.

*Charles J. Weiss,* and with him *Henry Wessel, Jr.,* and *Jerome Bennett,* for appellee, cited: Wicker v. Hoppock, 6 Wall 94; Miller v. Mariner's Church, 7 Me. 51; Russell v. Butterfield, 21 Wend. (N. Y.) 300; United States v. Burnham, 1 Mason 57; Taylor v. Read, 4 Paige (N. Y.) 561.

OPINION BY TREXLER, J., February 29, 1924:

On November 10, 1922, the Quaker City Sign Company, Inc., appellant, mailed to the appellee an order for 1,000—30″x8′ board with capping at the price of $3.50 each, 100 to be delivered each week. There was nothing said in the order as to terms of payment, but the appellant contends that there was a customary arrangement between the parties by which the purchaser gave its note 30 days after delivery, payable in 30 or 60 days. On December 6, 1922, the appellee delivered to the appellant one sign board of the dimensions and character as called for in the purchase order. The appellee notified the appellant that he would not complete the order to furnish the boards unless the appellant would pay in 10 days with a discount of 2% or 30 days net. Thereupon, the appellant about February 21, 1923, purchased from the Watsontown Company 999 boards of the dimensions and character of which the appellee had agreed

to furnish and paid for them $849.15 more than it would have been required to pay had the appellee furnished them, the terms being 1½%, 30 days net.  It proposes to offset this amount against another bill which the plaintiff has sued for.  There would have been sufficient evidence offered by the plaintiff to have found contrary to the above statement, but the court in entering judgment allowed the interest on $3,500 for 30 days "which interest the defendant claimed he had lost by reason of the plaintiff's failure to deal with him in the matter of the order in question upon the same terms as had been obtained in former transactions between the plaintiff and the defendant."  The appellant rightly assuming from this that the court had adopted its view that it was entitled in the transaction to the terms of credit which had theretofore prevailed, now claims that the court was wrong in fixing the damages at the amount of interest for the time of credit that had been extended; that the true measure of damages was the difference between the price agreed upon and the market price.  The defendant claims that the Watsontown Company was the lowest in price of any of those who were willing to furnish the lumber, but it gives no definite figures as to market prices, and as will be noted by a comparison of the figures given above the discount given by the Watsontown Company was less favorable than that at which the appellee was willing to furnish the lumber.  So we have this anomalous position that the defendant went in the open market and bought the material in question on stricter terms and at a higher price than the appellee was willing to furnish the lumber.  If it was able to procure the money required to purchase of the Watsontown Company, why did it not take the lumber offered by the plaintiff?  It will do it no good to say: "I bought the lumber at the same terms as to credit I could have obtained it from the plaintiff, but I paid eighty-five cents per board more for it and am entitled to that sum on

each board because plaintiff broke his contract as to terms of credit." This might be a good way to punish the plaintiff for not sticking to his bargain, but it is not the right way to fix defendant's damages. Under the circumstances of the case the lower court adopted the proper standard in fixing as the damages the interest on the sum of money that the purchaser would have enjoyed the use of under the original terms of credit. He is not without authority for so doing. Counsel have found no Pennsylvania cases on the point, but have called our attention to other authorities. In Warren v. Stoddard, 105 U. S. Reports 224, Stoddard, a publisher, sued an agent to recover money for books sold. The agent had left the employ of Stoddard and had sold a competitive encyclopedia. Stoddard thereupon had refused to supply Warren with any more encyclopedias to complete the orders, which he had already taken, unless he would pay cash with the order. Warren, the agent, claimed that this was contrary to his contract, which permitted a thirty-day credit and refused to take the books. He supplied books from other sources at a very much larger cost and claimed a set-off of $30,000 for damages. The set-off was not allowed for the reason that it was evident that Warren could have supplied the books for his customers by paying to Stoddard the cash, and that the only damage he suffered would have been interest for thirty days on the money involved. In Lawrence v. Porter, 63 Federal Reports 62, it is stated: "The fact that they could only buy from the defendants does not affect the duty of the plaintiffs to minimize their loss as far as they reasonably could. The offer to sell for cash at a reduced price more than equalized the interest for ninety days, which was the value of credit. There seems to be no insurmountable objection in thus permitting a delinquent contractor to minimize his loss. The obligation on the buyer to mitigate his loss, by reason of the seller's refusal to carry out such a sale, is not relaxed because

the delinquent seller affords the only opportunity for such reduction of the buyer's damages." Citing Warren v. Stoddard, supra, and Deere v. Lewis, 51 Ill. 254.

All the assignments are overruled and the judgment is affirmed.