## Huskey Manufacturing Company *v.* Friel-McLeister Company, Appellant.

*Building contracts—Labor and materials—Breach of contract—Counterclaim—Evidence.*

In an action of assumpsit on a contract for labor and materials furnished, it is proper, in supporting a counterclaim, to offer in evidence the bid of a contractor who did the work subsequent to the

plaintiff's breach, and the amount paid by the defendant to his employees on account of losses resulting from such breach.

Where a contractor fails to perform, without legal justification, the other party is entitled to recover the difference between the contract price and the amount which he is obliged to pay for the same thing under a new contract. The measure of damages is ordinarily the cost of securing the performance of the work by another, less the contract price.

If the subject of the contract is something having a known value in the open market, the going price in that market would ordinarily fix the amount of the damages. But where parties were dealing with a subject not for sale generally, and the defendant had not the opportunity to go into the open market, the amount paid a substituted contractor is prima facie evidence of the cost of performance to the defendant, if shown to be reasonable.

Argued December 10, 1924.    Appeal, No. 278, Oct. T., 1924, by defendant, from judgment of Municipal Court of Philadelphia, Nov. T., 1923, No. 378, on verdict for plaintiff in the case of Huskey Manufacturing Company v. Friel-McLeister Company.    Before PORTER, HENDERSON, TREXLER, LINN and GAWTHROP, JJ.    Reversed.

Assumpsit for labor and materials.    Before BONNIWELL, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff in the sum of $224.70, and judgment thereon.    Defendant appealed.

*Errors assigned* were various rulings on evidence, the charge of the court and answers to points.

*Joseph J. Brown,* and with him *Henry P. Brown,* for appellant.—When a contractor has refused to perform the work called for by his contract, evidence as to the amount paid another contractor for performing said work establishes, prima facie, the damages sustained by the part not in default: Sedgwick on Damages, 9th ed.,

vol. 2, sec. 618; Sutherland on Damages, 4th ed., vol. 3, sec. 698; Page on Contracts, 2d ed., vol. 6, sec. 3215; 9 C. J., p. 812; City of New York v. Second Avenue R. Co., 7 N. E. 905; McKegney v. Illinois Surety Co., 167 N. Y. S. 843; Bacigalupi et al. v. Phœnix Bldg. & Const. Co., 112 Pac. 892; Anderson v. Nordstrom, 61 N. W. 1132; Hays v. Street Ry. Co., 204 Pa. 488, 491; Seward v. Pa. Salt Mfg. Co., 266 Pa. 457; Michigan Lubricator Co. v. Ontario Cartridge Co., 275 Fed. 902, 903, 906.

*Edwin Fischer,* and with him *George Wentworth Carr* and *Abraham M. Rose,* for appellee, cited: Schonhardt v. Penna. R. R. Co., 216 Pa. 228; Roberts v. Phila., 239 Pa. 339; Rea v. R. R. Co., 229 Pa. 106; Seward v. Penna. Salt Mfg. Co., 266 Pa. 457; Meyer v. Quaker City Sign Co., 82 Pa. Superior Ct. 601; Lawrence v. Porter, 63 Fed. Rep. 62.

OPINION BY HENDERSON, J., February 27, 1925:

The plaintiff's action is founded on a claim for work and materials furnished to the defendant which was not disputed by the latter. The controversy arises out of a counterclaim set forth on the record by means of which the defendant sought to recover damages for a breach of contract by the plaintiff through which a loss resulted to the defendant in excess of the plaintiff's demand. This counterclaim arose out of a contract in writing entered into May 15, 1923, between the plaintiff and defendant according to the terms of which the former agreed to furnish to the latter the cabinet work for the Lawndale Bank and Trust Company's building in Philadelphia as shown on the architect's plan and subject to a copy of the specifications attached to the contract for twelve hundred and seventy-five dollars. The material was to have been delivered not later than June 8, 1923. On June 6th of that year the defendant received from the plaintiff the following letter:

"Friel-McLeister,
      "1615 Spruce Street,
          "Philadelphia.

"Gentlemen:

"With reference to the cabinet work for the Lawndale
Bank and Trust Company, kindly be advised that inas-
much as we have requested some form of guarantee from
you that payments will be made in accordance with the
contract and that the said guarantee was not forthcom-
ing we must therefore necessarily forego the pleasure
of serving you.

"Please consider the contract void.

"With many regrets we are pleased to remain,
                    "Yours very truly,
                "Huskey Manufacturing Company."

At the time when the plaintiff's bid was tendered, the
defendant received bids for the same material from
two other companies engaged in the same line of work;
the bid of the South Philadelphia Woodworking Com-
pany being $1,425 and somewhat lower than the third
bid.   On receipt of the letter above recited, the defend-
ant got into communication with the South Philadel-
phia Company and made a contract with it for the
necessary material, the consideration paid being the
amount stated in its bid theretofore tendered.   The
difference in cost between the price for which the plain-
tiff had agreed to do the work and that which was paid
to the South Philadelphia Company is one of the items
of the counterclaim.   As an additional set-off, the de-
fendant offered to prove that because of the plaintiff's
refusal to perform the contract, the defendant's work
at the bank was delayed from June 8th, the time when
the plaintiff should have delivered the material, until
June 15th, during which time the latter had employed
and was required to pay workmen who were idle by
reason of the plaintiff's failure to deliver the material
according to the contract.   As evidence to establish a

part of the defendant's counterclaim the defendant, having proved that it contracted with the South Philadelphia Company to furnish the material which the plaintiff had failed to do, offered to show the amount of the former company's bid. This evidence was rejected on objection of the plaintiff, as was also the offer to prove the bid in writing of the South Philadelphia Woodworking Company and of the Erik Jansson Company. The evident purpose of these offers was to show what it cost the defendant to procure the material which the plaintiff had refused to deliver and also to show that the amount so paid was a reasonable price. A breach of the contract by the plaintiff having been shown, it was in line with the position of the defendant to prove the extent of the injury he had sustained. If the subject of the contract had been something having a known value in the open market, the going price of the thing in that market would ordinarily fix the amount of the damage, but the parties here were dealing with a subject not for sale generally. What the defendant contracted for was material of a specified kind of fixed dimensions to be erected in a particular place in accordance with the plans of an architect. It is highly improbable that the same plan and specifications were appropriate to any other location in the Commonwealth. The defendant after the plaintiff's default had not the opportunity therefore to go into an open market. He must apply to someone engaged in the same kind of work who was willing to supply the required material. The amount paid to such substitute contractor is prima facie evidence of the cost of performance to the defendant if shown to be reasonable. The rule is familiar that where a contractor fails to perform without legal justification, the other party is entitled to recover the difference between the contract price and the amount which he is obliged to pay for the same thing under a new contract. The measure of damages is ordinarily the cost of securing the performance of the work by another less the con-

tract price: Sutherland on Damages, 4th Ed., Vol. 3, section 698; Sedgwick on Damages, 9th Ed. Vol. 2, section 618; Masterton v. The Mayor, 7 Hill 61. Where the subject of a contract relates to building or construction, the measure of damages is the reasonable cost to the owner of completing the contract, and where there is no other evidence on the subject the actual cost to the owner is some evidence of the reasonable cost of completion. In Michigan Lubricator Co. v. Ontario Cartridge Co., 275 Fed. 902, the court sustained the admission of evidence as to the cost of a substituted article because it tended to establish the measure of damages. In City of New York v. Second Avenue R. Co., 102 N. Y. 572, where the defendant was bound to make repairs in a city street and neglected so to do and the city proceeded to make the repairs and purchased the necessary materials, where it appeared that the work had been done in the usual manner by agencies usually employed in the prosecution of such work, it was held that proof of the cost of the repairs was prima facie evidence in the absence of any evidence of fraud or impeachment of the reasonableness of the charge. The same doctrine was applied in Comey v. United Surety Co., 217 N. Y. 268, and in Elmohar v. People's Surety Co., 217 N. Y. 289. It was held in Bacigalupi et al. v. Phœnix B. & C. Co., 14 Calif. 632, that the actual cost of completing a building where a breach of contract had occurred was some evidence of the reasonable cost of the building. The same principle was stated in Anderson v. Nordstrom, 60 Minn. 231. In that case a house was to be moved and the plaintiff was permitted to show what was the lowest price for which he could procure the work to be done on failure of the contractor to perform. There were three bids submitted as in the case before us and on default of performance by the lowest bidder, the bid of the next lowest was accepted and the judgment was sustained for the difference between the two bids as the measure of damage. The case of E. W. Bliss Co. v. Buffalo Tin

Can Co., 131 Fed. 51, is of like effect. The same subject is considered in Seward v. Pa. Salt Mfg. Co., 266 Pa. 457, where the general rule was recognized that in an action by a vendee against the vendor for failure to deliver goods according to contract, the measure of damages is the difference between the contract price and the market value at the time and place of delivery with interest, and in the same connection the court said: "Of course it may not at all times be possible to establish a general selling price, and in such cases actual market value may be shown by proof of facts and circumstances, fixing, to a reasonable degree of certainty, the amount the property would bring if offered at ordinary sale." If the product in question is not for sale in the open market the party injured may recover his actual damage: Pittsburgh Mfg. Co. v. Steel Co., 201 Pa. 150. The defendant applied to three concerns engaged in providing the kind of material he needed. The bid accepted was a little below the next higher bid and there was still a third bid. These offers of performance were some evidence of value and in the absence of proof of connivance were prima facie evidence of the reasonableness of the amount paid by the defendant to secure the performance of the contract the plaintiff had assumed. As the material must have been furnished in conformity to the specifications and at a particular time, the offers of responsible bidders to do the work would seem to be as good an estimate of the cost as could be obtained. The first, fifth and sixth assignments are sustained.

The other part of the defendant's counterclaim was a bill for $57, wages paid the defendant's carpenters who were prevented from working because of the plaintiff's failure to supply the material according to the contract. The reason for rejecting this evidence does not appear on the record, but on its face it seems to be admissible. If the men were employed, as alleged, and there was no other service in which they could work, their loss of time would be a direct consequence of the plaintiff's default

and a proper element in the computation of damage.   It may be that the claim contains an overcharge or that the men were not out of employment or might have been assigned to other work, but these are considerations relating to rebutting evidence.   The authorities cited by the appellee relate to proof of the value of property having a market value and not to an article made for a particular purpose and having no adaptation to any other than the particular use.   The seventh assignment is sustained.

The position is taken however on behalf of the appellee that the law requires a reasonable effort to mitigate damages and where loss is occasioned because no attempt is made to avoid it, nothing can be recovered, and Warren v. Stoddart, 105 U. S. Reports 224, and Meyer v. Quaker City Sign Co., 82 Pa. Superior Ct. 601, are relied on in support of the contention that the defendant could have complied with the plaintiff's demand for security and thereby have prevented the necessity of employing a new contractor.   It is to be noted however that the plaintiff was already in default in performance of its contract when its letter was received by the defendant on June sixth.   Time was apparently of some consequence in the finishing of the work in the bank and the plaintiff's obligation called for the delivery of all of the material not later than June eighth.   It is evident that nothing had been done toward performance of the contract by the plaintiff.   Compliance by the defendant was thereby postponed and we are not required to hold that the defendant must overlook the plaintiff's default and waive his right of action for delay by accepting a postponed performance under conditions not written in the contract nor implied by its terms.   In Hirsh v. Georgia Iron & Coal Co., 169 Fed. 578, Judge LURTON, in referring to the rule imposing on a party the obligation to do nothing to aggravate his injuries in the case of a breach of contract and to do all that he reasonably can to mitigate the loss, said:

"The duty imposed by the equitable rule referred to must be held within reasonable bounds. It is a rule which has never been regarded as requiring one to yield to a wrongful demand that he may thereby save the wrongdoer from the legal consequence of his own error." The defendant was certainly not bound to compromise any right or waive any remedy arising out of the plaintiff's existing breach of contract and thereby furnish a reward to the defaulting contractor. Moreover, the burden of proof is on the plaintiff to show that the damage could have been reasonably mitigated. There is no evidence of the defendant's financial circumstances or ability to provide the guaranty demanded, nor does it appear that the plaintiff was ready to perform after the sending of the letter quoted. In that letter it declared the contract "void" and evidently retired absolutely from the undertaking. Considering the lateness of the letter with respect to the time when the work should have been done and the definite and absolute terms in which it was expressed, there is room for the inference that the plaintiff desired to avoid the responsibility of the contract. However that may be, the subject of mitigation was one to be presented after the introduction of the defendant's proof: Howard Supply Co. v. Wells, 176 Fed. 516; Lillard v. Kentucky Distillcries, 134 Fed. 168; Hamilton v. McPherson, 28 N. Y. 72; Costigan v. M. & H. R. Co., 2 Denio 609; Mathesies v. Brooklyn Heights R. Co., 96 Fed. 795; Campfield v. Sauer, 189 Fed. 580. On consideration of the whole case we are of the opinion that the defendant's evidence on the subject of the cost to him of the work done by the second contractor should have been admitted, that the bids received by the defendant for the work when proved were competent evidence bearing on the reasonableness of the price paid for the material furnished and that the evidence of the loss of time of the defendant's employees was admissible as prima facie evidence of damage.

The judgment is therefore reversed with a venire.