Jessup & Moore Paper Co., Appellant, *v.* Bryant Paper Co., Appellant.

484

Argued May 21, 1929. Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

*George Wharton Pepper,* with him *J. W. McWilliams* and *Charles S. Wesley,* for appellant in No. 204.—Plaintiff is entitled as an element of damage to the loss sustained because of the increased cost of producing the product actually manufactured.

Loss which plaintiff sustained because of the increased cost of producing the product manufactured, is as a matter of law, an element of damage: Wolstenholme v. Randall, 295 Pa. 131.

The advantage secured to plaintiff in the contract was the acquisition of an order covering over ten per cent of the mill's production, and the consequent effect on production costs and profits from the mill's operations as a whole. Defendant is a manufacturer and was fully apprised of the situation, and "the background of the transaction." The results which followed its breach must have been within its contemplation: Bird v. St. Paul, etc., Co., 224 N. Y. 47.

As a general proposition, the profit is the difference between the contract price and "what the performance would have cost the plaintiff": See Masterson & South v. Mayor of City of N. Y., 7 Hill (N. Y.) 61; United States v. Envelope Co., 249 U. S. 313; Hinckley v. Steel Co., 121 U. S. 264; Hicks v. Guinness, 269 U. S. 71; Chicago, M. & St. P. R. R. v. McCaull & Dinsmore Co., 253 U. S. 97; Dravo C. Co. v. Rees & Sons, 291 Pa. 387.

*Thomas Ræburn White,* of *White, Parry, Schnader & Maris,* for appellant in No. 207.—The measure of damages in this case is the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted;

plaintiff having offered no evidence as to the market or current price has failed to prove any damages.

This court has repeatedly decided that the measure of damages in the sale of goods for which there is an available market is the same, whether or not the goods have been manufactured before the contract is repudiated: Sharpsville Furnace Co. v. Snyder, 223 Pa. 372; Spears v. Michell Co., 56 Pa. Superior Ct. 294.

Even on the theory advanced by plaintiff, that the measure of damages is the difference between the cost of manufacture and the selling price, plaintiff is not entitled to recover because it has not proven what the cost of manufacture would have been: Spiese v. Trust Co., 258 Pa. 414; Raby, Inc., v. Ward-Meehan Co., 261 Pa. 468; Cornelius v. Lytle, 246 Pa. 205; Bigham v. Ry., 223 Pa. 106; McConaghy v. Pemberton & Co., 168 Pa. 121; P. R. R. Co. v. Road Co., 71 Pa. 350.

OPINION BY MR. JUSTICE SADLER, September 30, 1929:

The Jessup & Moore Paper Company, plaintiff, was a manufacturer of paper and operated five mills, in one of which, known as the Delaware, it prepared wet and dry pulp used in the making of its finished material. A large portion of the product there made was employed in its four other plants, but a part was sold to outside concerns. In the latter instances, where shipment was required, the removal of moisture from the soda pulp was necessary, and this required an additional mechanical process. Market conditions, in the winter of 1920, indicated a possible scarcity of soda pulp the ensuing year, and manufacturers of paper, of which the Bryant Paper Company, defendant, was one, were anxious to make certain the securing of material necessary for the operation of their plants.

A contract was executed on October 28, 1920, by which the seller agreed to furnish monthly to defendant, upon demand, not less than 150 nor more than 200 tons of soda pulp, the price to be fixed at the end of

each month for the succeeding thirty days. The amount contracted for was roughly 10% of the pulp, both wet and dry, which could be produced at the Delaware mill. The maximum capacity of the plaintiff's plant was 28 "cooks" per day, and, to furnish the total required for its own use and that of others, who had agreed to buy, 24½ "cooks" were necessary. After defendant repudiated its contract only 22 were required.

Subsequent to the making of the agreement, and with the beginning of the new year, deliveries to a limited extent were made and accepted by the buyer at prices fixed from month to month. By June 1st it had received no more than 400 of the 1,000 tons agreed to be purchased prior to that date. A supplemental contract was entered into by the parties providing that the delivery of the 600 tons, not yet taken, should be postponed until 1922, when one-third of the amount should be received and paid for by the buyer monthly during January, February and March,—the total contracted for from June 1st to December 31, 1921, however, to be received as originally stipulated for. Notwithstanding, the defendant accepted only 45 tons in June and 78 in July, and on the 16th of that month notified the seller of its refusal to accept any additional shipment. At the time of the expiration of the extended contract it was in default to the amount of practically 1,800 tons. Though the additional soda pulp was not manufactured by plaintiff in view of the notice of defendant, yet it held itself in readiness to comply with its obligation, and, at the end of each month, fixed the price for the one following, the maximum being 4.75c per pound. In December of 1921 it named a lower rate of 4c, and, in reply, the defendant again stated its unwillingness to receive further tonnage. In view of this declaration, it was unnecessary to again specify the cost price, and no further designation was made prior to the termination of the contract period as extended, and which ended on March 31, 1922.

Thereafter plaintiff brought suit for the damages sustained by the breach of the contract, which claim was defended on the ground that the obligations of the parties were not definitely fixed in writing, and therefore no recovery could be had in view of the provisions of section 4 of the Sales Act (May 19, 1915, P. L. 543); and, further, that the agreement was invalid for want of mutuality because obligatory on one party and optional as to the other. By agreement, the case was heard before the court without a jury, and the trial judge preliminarily decided in favor of the plaintiff without assessing damages, it being understood that this should not be done until the question of any liability had been finally determined. Exceptions to this ruling were sustained by the court in banc, which entered judgment n. o. v. for the defendant, but, on appeal, the conclusion reached was reversed, and the record was remitted so that the money loss might be determined: Jessup & Moore Paper Co. v. Bryant Paper Co., 283 Pa. 434. The opinion in the reported case sets forth in more detail the facts here involved, and what was there said need not be repeated here.

When the record was returned to the court below, additional testimony was taken. Expert accountants were appointed by both sides to examine the books of the plaintiff company to determine the actual cost of manufacture, but access to those disclosing the overhead charges of plaintiff was refused. Upon application, the trial judge directed that they be produced. When this was done, still further evidence was received to fix the loss, if any, sustained by the plaintiff. The witnesses on both sides agreed that the expense of production, if there was included a proportionate share of the overhead and administrative expenses, made up of salaries of officers for the main office, taxes, legal expenses, insurance, interest on corporate indebtedness and depreciation reserves, amounted to $149,819, and that the contract price for the entire period reached a total of $155,-

705. Based on this conclusion, the damage was thus determined at $2,303.72 as of December 31, 1921, and an additional sum of $3,582 between that period and March 31, 1922, making the total difference between cost of production and the contract price, $5,885.72, if the calculation, as accepted by the court below, properly measured the loss sustained by the seller, and judgment for the amount named, with interest from the dates fixed, was entered.

The sole question presented for consideration below and here revolves about this determination. The correctness of the ruling depends upon the construction to be placed upon section 64 of the Sales Act (May 19, 1915, P. L. 543,—practically a restatement of the law as theretofore controlling: 2 Williston on Sales 1432),— which provides that where a buyer refuses to accept goods purchased he shall be liable for damages directly and naturally resulting in the ordinary course from the buyer's breach of his contract. Paragraph 3 provides, "Where there is an available market for the goods in question, the measure of damage is, in the absence of special circumstances showing proximate damage of a greater amount, the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted, or, if no time is fixed for acceptance, then at the time of the refusal to accept." It has been said in construing a uniform Sales Act, similar in language to that adopted in this State, that the quoted section applies only to cases where the goods purchased have actually been manufactured; and, in the present case, as a result of the notice of the buyer, they were not: Rowland & Whytock v. Rex Mfg. Co., 141 Atl. (R. I.) 310. Though applicable, when goods are actually produced and ready for delivery, or even where this is not the fact, still it must appear, in the absence of special circumstances, that there was an available market for the property pur-

chased, if the measure of loss is to be determined in the way therein set forth.

The trial court has found as a fact in the present case that there was no ability to sell to the public generally, and this conclusion is justified by the evidence. It is immaterial, in passing on this question, that a few sales may have been made from time to time. The mere fact that the seller is able to dispose of some like property does not establish a general market: Puritan Coke Co. v. Clark, 204 Pa. 556; Samuel v. de la Sota, 54 Pa. Superior Ct. 1; Todd v. Gamble, 148 N. Y. 382. The evidence here disclosed there was no opportunity to sell from day to day the product which might be produced, and efforts to make sales, except in a few instances, were found to be fruitless. If a fixed market price had existed, then the measure of damages would have been the difference between that sum and the one agreed to be paid (Frank Pure Food Co. v. Dodson, 281 Pa. 125), or if specially prepared for the contractee the loss would have been measured by the difference between the re-sale price and that agreed on: Mattison Machine Works v. Nypeen F. Co., 286 Pa. 501; Barber Milling Co. v. Leichthammer Baking Co., 273 Pa. 90. In the absence of proof of a market value, had such existed, only nominal damages could have been awarded, but this rule can have no application in this case.

The soda pulp here contracted for was not actually prepared because of the expressed intention of the buyer not to carry out its contract. The damages must therefore be determined as provided in paragraph 4, of section 64, which declares that, when the contract of sale has been repudiated by the buyer and the seller notified to proceed no further, "The buyer shall be liable to the seller for no greater damages than the seller would have suffered if he did nothing towards carrying out the contract or the sale after receiving notice of the buyer's repudiation or countermand. The profit the seller would have made if the contract or the sale had been fully per-

formed shall be allowed for in estimating such damages." How this profit shall be measured is the subject of conflict. The court below determined that it is to be fixed by the difference between the price of manufacture and that agreed to be paid. Our cases are clear in holding that ordinarily, where goods have not been manufactured before rescission, the recoverable loss is the difference between cost and agreed price: Winslow Bros. v. Dupuy, 208 Pa. 98; Hinckley v. Pittsburgh Bessemer Steel Co., 121 U. S. 264; United States v. Purcell Envelope Co., 249 Pa. 313; Solomon v. Waterbury Brass Goods Corp., 6 F. (2d) 990. In construing the Ohio Uniform Sales Act, containing the same language as our own, the circuit court of appeals (Miami Cycle & Mfg. Co. v. National Carbon Co., 268 F. 46) said (page 54): "The profit the seller would have made if the contract or the sale had been fully performed shall be considered in estimating such damages. The seller's damages, in such a case, where title is not passed,...... is cost incurred, less salvage, plus lost profits." See, also, Dravo Contracting Co. v. Rees & Sons Co., 291 Pa. 387. Plaintiff does not complain of this measure of loss, but insists that elements were improperly included in reaching the expense of production, and matters wrongfully omitted from consideration in determining the total. The actual figures, based on the respective theories of the parties, are not in dispute, having been fixed at the same amounts by experts on both sides.

The buyer is bound to foresee only the probable consequences of his conduct (Spiese v. Mutual Trust Co. (No. 2), 258 Pa. 422), and the seller can recover only for such losses as must necessarily have been in contemplation of the parties when the contract was made (Raby, Inc., v. Ward-Meehan & Co., 261 Pa. 468; Nusbaum v. Ins. Co., 276 Pa. 526; Mayer Brick Co. v. Kennedy Co., 230 Pa. 98; Weaver Coal Co. v. Maryland Casualty Co., 295 Pa. 486), or which must have been deemed probable to the ordinary buyer: Wolstenholme

v. Randall, Inc., 295 Pa. 131; 2 Williston on Sales 1464. On the other hand, where there has been a repudiation by the purchaser, the seller must use every reasonable means to reduce the injury which may occur (Sharpsville Furnace Co. v. Snyder, 223 Pa. 372), and, if possible, eliminate all additional and unnecessary expense: French v. Pullman Motor Car Co., 242 Pa. 136. In the present case the seller had entered into contracts requiring the operation of its mill at practically 100% capacity, and arranged its schedule of operation on this basis so that the buyer could, as requested, be assured of a constant supply of material for one year in advance. That it kept its machines in movement for but 90% of the time was solely due to the wrongful act of defendant in repudiating its obligation, and the latter is therefore chargeable with the direct loss which resulted: Singer Mfg. Co. v. Christian, 211 Pa. 534.

The real conflict in the present case arises over the fixing of the cost price. The experts first appointed by the court to determine accurately this amount of loss deemed essential an examination of the books of the corporation so as to fix the overhead expense attendant upon the manufacture in all the five mills of plaintiff company. This practice would be required to establish the corporate profit, but not necessarily the production cost of the 10% which had been purchased by the defendant and not taken. After depositions taken, the learned court below determined these elements should be considered, and so ordered in an interlocutory opinion filed. The accountants thereupon fixed in dollars and cents a manufacturing cost, as contended for by the defendant, including expenses and salaries of the general office of plaintiff, taxes on the Delaware Mills, legal fees, life insurance premiums on the life of plaintiff's president, interest on corporate indebtedness and depreciation reserves. The plaintiff insists the items in question should not be considered, asserting that these charges, though properly included, if the general earn-

ings of the corporation were to be determined, yet have no relevancy in ascertaining the cost of production of the tonnage agreed to be taken, since the charges referred to would be constant whether the production was 90% or 100% of the capacity of the mills. Both parties are in accord as to the dollars and cents involved in the various items, but dispute as to the matters to be included in fixing manufacturing expense.

The output of the mills was 26 cooks per day. To comply with the Bryant order, and manufacture the soda pulp agreed upon, 24½ would have been required, and the ordinary operations, on the basis of 90%, limited this number to 22. The court below found the same number of men were essential in the work to complete the smaller number as would have been needed to supply the larger amount. It also determined that the general expenses would not be increased if the plant be operated at 100% capacity. Though it did find, in answer to the 13th request of the defendant, that plaintiff had offered no evidence as to the general cost of labor required to carry out the Bryant contract, and, in its 9th general finding, stated that the making of the additional cooks would have effected a reduction in the number of days of labor, and thus have made possible a saving in cost of the product, since the number of working units might have been lessened, with a consequent decrease in outlays for wages, yet it failed to give consideration to the following stipulation, which appears of record: "It is agreed between plaintiff and defendant that in the preparation of figures by the accountants the additional labor involved in the preparation of the ingredients was included by them in the additional cost to the plaintiff to manufacture the additional production for the Bryant Paper Company under the various headings of raw material," and the court found (number 19) there were no additional labor costs, though the days of operation might have been decreased. The schedules prepared by the accountants for both parties included the

extra cost of the pulp wood and coal required for manufacturing the Byrant tonnage, and allowed as well for the value of the by-products which could have been recovered on the soda pulp contracted for, but plaintiff in the final analysis, was also charged with a proportionate share of the additional expenditures, not made necessary to the fulfillment of the buyer's contract. The evidence showed that no depreciation in the machinery would have been occasioned by the manufacture of the additional tonnage contracted for.

The plaintiff was entitled to such gain as would have accrued had the contract been completed (Dravo Contracting Co. v. Rees & Sons, 291 Pa. 393), and an allowance must be made for such loss: Sales Act, May 19, 1915, P. L. 543. "The law does not require absolute certainty as to the data upon which profits are to be estimated, but certainty to a reasonable degree or extent so that the damages may rest upon a definite basis and not wholly in speculation and conjecture": Wilson v. Wernwag, 217 Pa. 82, 95. In determining this amount, the expense which the seller would have incurred in producing the manufactured article must be considered, and the record in the present case shows it was. There was no additional labor required, nor would any depreciation in the machines used have resulted, if the soda pulp had been made, and the value of the by-products obtained from the making of the pulp was deducted from the damages claimed. The overhead expenses, which defendant insists should be added as a cost of manufacture, were constant in character, and would not have been affected by the performance of the additional work. There was no proof that these necessary corporate costs would have increased had the Bryant contract been completed, and such sums cannot therefore be used to reduce the damage allowable: Morrow Smith Co. v. Cleveland T. Co., 296 Pa. 377; Stevenson v. Smith, 82 Pa. Superior Ct. 539; Huskey Mfg. Co. v. Friel-McLeister, 84 Pa. Superior Ct. 328. The expenditures

with which the plaintiff was charged by the court below were not necessarily incident to the carrying out of the contract entered into, as in Rantoul Co. v. Claremont Paper Co., 196 F. 306; Klingman v. Racine-Sattley Co., 149 Ia. 634, 128 N. W. 1109; Detroit Fire Proofing Tile Co. v. Vinton Co., 190 Mich. 275, 157 N. W. 8, and other like cases which might be cited.

The defendant was entitled only to a deduction for cost which would necessarily have been incurred in the performance of the contract. The seller was entitled to be reimbursed for his loss, which is not to be decreased by subtracting charges necessarily involved in the general operation of its business, whether producing 90 or 100%. Perhaps no better illustration can be given of the error of the rule applied by the court below than by calling attention to the fact that, under it, the profits of a particular contract are made to depend on whether or not it is to be performed by an individual (whose general indebtedness never would be considered in such cases), or by a corporation, and, if by the latter, upon whether or not it has a general corporate indebtedness. The additional material required to carry out the contract, plus the value of the by-products obtainable, were properly considered, but there would have been no increase in labor or deterioration of machines, and the general corporate expense for the five mills would not have varied. It is possible that the number of days of actual operation could have been reduced, but the same labor was required to produce the 24½ cooks, contracted for, as the 22 made.

It follows from what has been said that the seller in the present case has not been awarded a sum which represents its actual loss, as shown by the undisputed figures in evidence, and the judgment entered must be set aside. Without referring in detail to the many assignments of error, the twelfth, dismissing the eleventh exception to the findings of fact, in which is set forth correctly the damages suffered, as shown by the record, is

sustained. The judgment in No. 204, January Term, 1929, is reversed and here entered for plaintiff in the sum of $94,671.49, as of January 1, 1927, being the total damage with interest calculated to the date mentioned.

As previously noted, the facts justified a finding that there was no available market for the goods purchased, and damages could not be assessed on the difference between such an obtainable price and the cost of manufacture. The assignments of error filed in the cross-appeal by defendant, to No. 207, January Term, 1929, must therefore be dismissed.