MARGARET MILL v. AYCOCK HOSIERY MILLS. No. 1.—101 S. W. (2d) 154.

Eastern Section. March 28, 1936.

Petition for Certiorari denied by Supreme Court, January 16, 1937.

Lynch, Bachman, Phillips & Lynch, of Chattanooga, for appellant.
Williams & Frierson, of Chattanooga, and George P. Cooper, of Huntsville, Ala., for appellee.

McAMIS, J. This is an action by the seller for damages for repudiation of a contract to purchase 67,986 pounds of yarn at 32½ cents per pound. Appeal by the buyer from a recovery in favor of the seller.

On November 8, 1929, defendant, Aycock Hosiery Mills, purchased from the complainant, Margaret Mill, 100,000 pounds of sizes 15, 18, and 24 yarn manufactured by complainant. According to trade usage, the order is to be interpreted as an order for 100,000 pounds of No. 18 yarn with the privilege of taking a part of the order in No. 15 and No. 24. Complainant was already under contract to furnish other yarn and it was stipulated that deliveries were to begin following completion of the previous order.

Upon accepting said order, complainant purchased sufficient cotton at the then prevailing price of 17.55 cents per pound to complete the manufacture of 100,000 pounds of yarn.

Shipments of yarn in relatively small quantities were made as requested by defendant from December 20, 1929, when the first shipment was made, until August 7, 1931. These shipments aggregated 32,014 pounds, leaving 67,986 of the original order of 100,000 pounds for which no shipping instructions were given and which defendant finally refused to accept.

During 1930, 1931, and 1932 defendant operated its mill but purchased a part of its requirements elsewhere. After the year 1929, the market price of cotton was continuously below the price prevailing when the order was placed and accepted, and on July 1, 1932, the market had dropped to $5\frac{3}{4}$ cents per pound. Complainant was lenient with defendant in the matter of shipping orders, but all the while insisted upon its contract. Correspondence passing between the parties shows that defendant sought to have shipments kept as small as possible and spread over as long a period as possible. This was done because both parties hoped by this means to save defendant as much loss as possible by waiting for the return of higher market prices for cotton and yarn.

However, it finally became apparent that defendant did not intend to accept further shipments resulting in the institution of this suit. The chancellor found that defendant breached the contract and fixed July 1, 1932, as the date of the breach. Of this holding there is no complaint. The question presented is with respect to the measure of damages.

Upon a former appeal to the Supreme Court,[1] it was held that the correct measure of recovery was the profits complainant would have made if it had been permitted to complete its contract, rather than the difference between the market value of the yearn on the date of the breach of the contract and the contract price of $32\frac{1}{2}$ cents, the court saying the rule to be observed was that applied in Gardner v. Deeds & Hirsig, 116 Tenn., 128, 92 S. W., 518, 4 L. R. A. (N. S.), 740, 7 Ann. Cas., 1172.

The cause was accordingly remanded ''for ascertainment of damages,'' according to the rule announced in that case. Upon the remand, the chancellor ordered a reference for that purpose and thereafter confirmed the master's report fixing the amount of the recovery at $12,745.61 with interest from the date of the filing of the bill. From this decree defendant has appealed to this court.

Under the order of reference, proof was introduced by complainant fixing the cost of manufacturing cotton into yarn, including the cost of cotton at $5\frac{3}{4}$ cents per pound, labor bailing, drayage, fuel, power, lubrication, water, building repair, machinery repair, supplies, com-

---

[1] No opinion for publication.

mission, discounts, insurance, interest, office expense, and taxes at 13 cents per pound. Freight to defendants plant was estimated to be .37 cents, making a total cost of 13.37 cents per pound of yarn if it had been delivered to defendant's plant on July 1, 1932, the date of breach.

This proof consists of the testimony of the secretary and treasurer of complainant's successor, who is shown to be familiar with the manufacture of cotton yarn and the cost formula for same in the same locality on the date of the breach of the contract. This evidence was competent and proper under the authority of Worrell & Williams v. Kinnear Manufacturing Co., 103 Va., 719, 49 S. E., 988, 2 Ann. Cas., 997, wherein this question was under consideration in a similar suit by a manufacturing seller against the buyer.

Using as a basis for calculation a manufacturing and delivering cost 13.37 cents per pound, including cost of cotton at 5¾ cents, the master subtracted this figure from the contract price of 32½ cents per pound (less 2 per cent for the weight of cones), and the difference was held to represent the amount of complainant's profit on each pound of the yarn. This difference was then multiplied by 67,986, the number of pounds of yarn which defendant refused to accept, and the result was held to be the recoverable damages.

Defendant's contention, in brief, is that the master should have taken 17.55 cents as the cost of cotton instead of 5¾ cents, thereby reducing the profit on each pound of yarn by the difference between these figures. This insistence proceeds upon the theory that complainant purchased cotton at 17.55 cents per pound for use in manufacturing the yarn purchased by defendant, and therefore its profit would be the difference between the cost of manufacturing yarn out of cotton bought at that price and the contract price. A further premise for this contention is the holding of the Supreme Court, to which we have referred, adopting as the basis for recovery the profits which complainant would have made had defendant not breached the contract.

This argument is pressed with much force and ability, but, as we conceive, is based upon a misconstruction of the decree of the Supreme Court upon the first appeal. If we construe that decree as holding that the amount of the damages is to be measured alone by the profits complainant would have made if it had been permitted to complete the contract, to the exclusion of actual losses incurred by the decline in the price of unused materials, there would be merit in this argument.

However, we do not think the decree is susceptible of that interpretation. The question before the court appears to have been whether the correct measure was the difference between the market price and the contract price, as the chancellor had held, or the profits which

complainant would have made if it had been permitted to complete the contract. We find nothing to indicate that the court had in mind the question of whether, in arriving at the amount of profits, complainant would be required to take, as a basis for figuring cost, cotton purchased at 17.55 cents per pound, or whether, if complainant had already sold said cotton, it would be permitted to benefit by the decline in the price of cotton by going upon the market and purchasing its requirements at 5¾ cents per pound, using that as a basis for calculating the cost of yarn.

The decree of the Supreme Court refers to the case of Gardner v. Deeds & Hirsig, 116 Tenn., 128, 92 S. W., 518, 4 L. R. A. (N. S.), 740, 7 Ann. Cas., 1172, for a statement of the rule by which complainant's damages were to be ascertained. It was decided in that case that the manufacturer should be permitted to recover the profits he would have made if he had been permitted to complete the contract; i. e., the contract price of the goods less the cost of manufacture. There is nothing in the opinion in that case to the effect that, if the manufacturer had laid in materials with which to complete the contract, the market price of which had declined at the time of breach, he would not be entitled to recover the difference in the cost and market price of such material, in addition to the profits he would have made by completing the contract.

The facts of that case, as stated in the opinion, were that the value of the material purchased by the seller had increased in value between the date of purchase and the date of the breach of the contract by the buyer. The situation here presented was therefore not considered in that case.

However, the court cited with approval the case of U. S. v. Behan, 110 U. S., 338, 344, 4 S. Ct., 81, 83, 28 L. Ed., 168, wherein it was said:

"If the breach consists in preventing the performance of the contract, without the fault of the other party, who is willing to perform it, the loss of the latter will consist of two distinct items or grounds of damage, namely,—First, what he has already expended towards performance (*less the value of materials on hand*); secondly, the profits that he would realize by performing the whole contract." (Italics ours.)

The general rule is that, in addition to lost profits, the seller may recover expenditures reasonably made in part performance of the contract to the extent they are wasted when performance is abandoned, and, if materials for the manufacture of the goods have been purchased or appropriated to the manufacture thereof but no work has been bestowed upon them, the seller is entitled to recover any loss occasioned by a decline in value of said materials between the time of their purchase and the breach of the contract. 55 C. J., 1070; Rock v. Gaede, 111 Kan., 214, 207 P., 323, 27 A. L. R., 1152.

In Kingman & Co. v. Western Mfg. Co., 92 F., 486, 34 C. C. A., 489, it was held that, if material had been purchased with which to fulfill the contract, but no work had been bestowed upon them at the time of the breach, the measure of the manufacturer's damages is the difference between the amount it would have cost him to manufacture and deliver the articles and the contract price, plus the difference between the cost and the market value of materials that have been purchased at the time of the breach, if the market value of such materials should be less than the cost.

In our opinion, the decree of the Supreme Court in this case does not exclude losses sustained by the seller in the decline in the market value of unappropriated goods purchased to fulfill the contract and that, under the foregoing authorities, the buyer must bear such loss where he repudiates the contract. The injustice of the contrary view is apparent.

To illustrate, suppose complainant, having purchased cotton at 17.55 cents per pound, held it until defendant finally repudiated the contract on July 1, 1932. After it developed that defendant would not accept the remainder of the order, its only course of action would have been to sell the cotton remaining on hand at the prevailing market price of $5\frac{3}{4}$ cents per pound, thereby sustaining a loss of approximately $8,000 on materials. According to the proof, the profits it would have made, but for the breach of contract by defendant, would have amounted to much less than that amount. It could hardly be said that this would result in adequate monetary compensation for a loss sustained entirely as a result of the breach of the contract by defendant.

Suppose, on the other hand, it had purchased cotton only as needed and had none on hand on July 1, 1932. In that case it could have gone upon the market and purchased cotton at approximately 12 cents per pound less than the prevailing price at the date of the contract. In that case its profits would have been correspondingly increased. By the same token, defendant's liability for loss of profits would have been increased to the extent of 12 cents per pound, and this, added to the profit of manufacture, would result in the same recovery as fixed by the chancellor.

If defendant had breached its contract before the decline in the market price of cotton, of course, the recovery would have been less because complainant could have resold its cotton and prevented a loss upon that account, or, stated differently, its profit would have been less; but defendant delayed its refusal to accept, no doubt, because it could procure yarn on the market for less than the contract price. It should not now complain because the amount of the recovery was increased by reason of its delay in ordering shipment of the yarn for which it alone was responsible.

■ We think complainant is entitled to be made whole. The aim of the law is to place the seller in the same position from a monetary standpoint that he wo'uld have occupied if the buyer had not breached the contract. 24 R. C. L., 117. This result cannot be attained if the seller is allowed to recover his profits but must suffer a loss by reason of a decline in the market price of materials or, in case he has not laid them in, to figure cost of materials at a price higher than he would have had to pay on the market to fulfill the contract. We find no error in the amount of the recovery below, and the assignments in, that respect are overruled.

■ It is also insisted that complainant cannot recover because it disabled itself from performing the contract. Prior to the appeal to the Supreme Court, it was stipulated that before the sale of its mill in the summer of 1931 complainant was able and willing to complete the contract by delivering yarn of its own manufacture and that thereafter it had arranged with its successors to manufacture and deliver the yarn, and was therefore able and willing to make delivery of the same quality yarn made at the same mill as that pur- ·chased by defendant until the breach of the contract by defendant. We think this stipulation and the decree of the chancellor and of the Supreme Court based thereon foreclose further consideration of that ground of defense.

■ Finally, it is insisted there is no proof to sustain the master's ·report because there is no evidence of the cost of manufacturing No. 15 and No. 24 yarn. We stated at the beginning of this opinion that the order was for No. 18 yarn with the privilege of taking a part of the order in No. 15 and No. 24 yarn. Defendant did not elect to take any part of the undelivered part of the order in No. 15 and No. 24 · yarn but repudiated the contract. We do not think it can make this election after repudiation, at least, without showing that the profits to complainant on No. 15 and No. 24 yarn would havè been less than on No. 18.

All of the assignments of error are without merit, and the decree below must be affirmed, with costs.

Portrum and Ailor, JJ., concur.