P.C. DATA CENTERS OF PA., INC. and P.C. Data Centers Inc., Plaintiffs,

v.

FEDERAL EXPRESS CORPORATION, Defendant.

No. 3:CV–97–0831.

United States District Court, M.D. Pennsylvania.

Aug. 24, 2000.

Ronald V. Santora, Hourigan, Kluger, Spohrer & Quinn, Wilkes-Barre, PA, for P.C. Data Centers of Pa., Inc.

Bonnie Glantz Fatell, Blank Rome Comisky & McCauley, Philadelphia, PA, Patricia A. Higginbotham, Memphis, TN, William H. Roberts, Blank Rome Comisky & McCauley, Philadelphia, PA, Daniel H. Wheeler, Blank Rome Comisky & McCauley, LLP, Philadelphia, PA, Cynthia J. Collins, Federal Express Corporation, Legal Department, Memphis, TN, Richard R. Roberts, Federal Express Corp/Legal Litigation, Memphis, TN, for Federal Express Corp.

## MEMORANDUM

VANASKIE, Chief Judge.

Remaining pending in this action is the claim of P.C. Data Centers, Inc. ("P.C.Data") that Federal Express Corporation ("FedEx") breached its alleged contractual obligation to provide airbills to

P.C. Data for entry into a computer database.[1] The premise for P.C. Data's breach of contract claim is the assertion that the parties' written agreements required FedEx to provide a certain volume of airbills. P.C. Data claims that its damages should be calculated as follows: price to be paid by FedEx per airbill minus labor costs per airbill saved by P.C. Data multiplied by the alleged shortfall in guaranteed airbills, plus an expenditure of $950,000 made by P.C. Data for hardware and software needed to process FedEx airbills.

FedEx has moved for partial summary judgment, asserting that under Tennessee law, which governs the parties' contractual relationship, damages for breach of contract are limited to "net profits," so that P.C. Data's *indirect* costs, or overhead, and the $950,000 expenditure must be eliminated from P.C. Data's damage calculation. P.C. Data opposes the summary judgment motion, asserting that it is entitled to recover both the $950,000 expenditure and the damages calculated by taking the price per airbill less only the *direct* labor costs per airbill multiplied by the alleged airbill shortage.

Having carefully considered the record and the applicable law, I find that P.C. Data is entitled to claim the fixed overhead actually incurred and subsumed within its damage calculation, but is not entitled to recover as a separate item of damages the $950,000 expenditure for hardware and software purportedly devoted exclusively to the processing of FedEx airbills. Accordingly, the FedEx motion for partial summary judgment will be granted in part and denied in part.

Also pending before the Court is P.C. Data's motion for a jury trial pursuant to Fed.R.Civ.P. 39(b). Because P.C.Pa. properly demanded a jury trial and did not effectively withdraw its jury trial demand, P.C. Data is entitled to rely on that jury trial demand. Even if P.C.Pa. had effectively withdrawn its jury trial demand, discretion would be exercised under Fed. R.Civ.P. 39(b) to allow P.C. Data a jury trial. Accordingly, its motion for a jury trial will be granted.

## I. BACKGROUND

It is undisputed that FedEx and P.C. Data are parties to a Data Entry Services Agreement (the "Agreement") pursuant to which P.C. Data was to perform data entry services for FedEx. Under the Agreement, P.C. Data was paid a certain amount per airbill processed. FedEx terminated the Agreement in 1996. P.C. Data contends that the Agreement required FedEx to provide P.C. Data a certain volume of airbills for data entry services. P.C. Data alleges that FedEx breached the Agreement by failing to provide the guaranteed amount of airbills.

For the period May, 1993 through December, 1993, P.C. Data estimates a shortfall of 16 million airbills. It claims damages of 3.6¢ per airbill, for a total of $576,000 for that time frame. (*See* Exhibit "H" to the Amended Complaint, Invoice # 4001, dated March 10, 1997.) With respect to the time period February 1, 1994 through December 31, 1996, P.C. Data alleges a shortfall of 44,725,598 airbills. Multiplied by 3.6 ¢ per airbill, denominated as the "non-direct labor expenses and profit" of P.C. Data, damages claimed for the period of February 1, 1994 through December 31, 1996 total $1,610,121.53. (*See* Ex. A to the Affidavit of Steve T. Foster (Dkt. Entry 54), Invoice # 3245–2.)[2]

1. By Memorandum and Order filed on May 11, 1998 (Dkt. Entry 35), the claims of P.C. Data and co-plaintiff P.C. Data Centers of Pa., Inc. ("P.C.Pa.") for breach of contract due to early termination, breach of the duty of good faith and fair dealing, and intentional and negligent misrepresentation were dismissed. In addition, because P.C.Pa. did not have a contractual relationship with FedEx and could not be viewed as the alter ego of P.C. Data, its parent corporation, P.C.Pa. was dismissed from this action.

2. By Notice provided on October 8, 1996, FedEx advised P.C. Data that it was terminating its contractual relationship with P.C. Data

According to the affidavit of P.C. Data's accountant, Gunther Adler, CPA, the 3.6¢ per airbill was derived by deducting P.C. Data's "direct costs" per airbill, representing payments to operators per airbill, from the contracted sales price per airbill. As noted above, P.C. Data's Invoice # 3245–2 labeled the 3.6 ¢ per airbill as "non direct labor expenses and profit." In response to a discovery request, P.C. Data stated that its indirect expenses included "production supplies, training costs, travel and entertainment, auto expense and delivery, dues and subscriptions/consultants, advertising, rent, insurance, utilities, telephone, professional fees, office expenses, bank charges, bankruptcy fees, miscellaneous, employee welfare, interest expense, depreciation, and salaries—indirect." (*See* January 8, 1999 Supplemental Discovery Responses Addressing Indirect Expenses, attached as Exhibit "B" to the Affidavit of Steve T. Foster (Dkt. Entry 54.)) In answer to an interrogatory inquiring as to "[w]hat part of the $1,610,120.53 reflected in Invoice No. 3245–2 represents 'nondirect labor,'" P.C. Data answered, "99.95 percent represents non-direct labor." (P.C. Data's Responses to FedEx First Set of Interrogatories, No. 3, attached to the Foster Affidavit as Exhibit "C.")[3]

P.C. Data's third invoice at issue in this litigation, Invoice # 4002, is dated March 10, 1997. It claims expenses for hardware and software devoted to its performance under the Agreement in the total amount of $950,000. (Exhibit "G" to the Amended Complaint.)

In summary, P.C. Data claims damages as follows:

Invoice # 4001—shortfall in airbills for the period May, 1993 through December 1993—$576,000;

Invoice # 3245–2—shortfall in airbills for the period February 1994 through December 31, 1996—$1,610,121.53;

Invoice # 4002—expenditures incurred on account of the FedEx contract—$950,-000. Total damages claimed thus amount to $3,136,121.53

This litigation has its genesis in an adversary proceeding commenced on April 24, 1997 in the Bankruptcy Court for this District. The adversary proceeding was brought, not by P.C. Data, but by P.C.Pa. The complaint filed by P.C.Pa. was endorsed with a jury trial demand.

On May 22, 1997, FedEx moved for withdrawal of the reference from the Bankruptcy Court, claiming, *inter alia* that the demand for a jury trial made by P.C.Pa. warranted a withdrawal of the reference from Bankruptcy Court with respect to the adversary proceeding. In an apparent attempt to defeat this argument, P.C.Pa., on or about June 11, 1997, filed a "withdrawal of jury demand." In a Reply Brief filed in support of its motion for withdrawal of the reference, FedEx did not concede the validity of the withdrawal of the jury trial demand, asserting that the demand "requires that the trial be in district court." (Reply Brief, in Support of Motion for Withdrawal of Reference at 15.) In granting the motion for withdrawal of the reference, I observed that P.C.Pa's unilateral withdrawal of its request for a

effective January 8, 1997, pursuant to a 90-day termination provision in the contract. The contract did in fact terminate on January 8, 1997, instead of May 31, 1997, which was the end of the 40 month term set forth in a February 24, 1994 amendment to the Agreement. In this Court's May 11, 1998 Memorandum and Order, P.C. Data's claim of breach of contract due to early termination was rejected in light of the Agreement's express provision that "[e]ither party shall have the right to terminate this Agreement, without cause, upon at least ninety (90) days prior

written notice to the other party...." (Amended Complaint, Data Entry Services Agreement, Ex. B., § 3(b).) In light of this ruling, P.C. Data properly limited its claim to the period ending December 31, 1996.

3. FedEx did not inquire of P.C. Data as to the percentage of the $576,000 claimed in Invoice # 4001 that represented "nondirect labor." Thus, the amount claimed in Invoice # 4001 does not appear to be presently in issue.

jury trial should be viewed as a motion to withdraw the demand for a jury trial. (February 3, 1998 Memorandum and Order at 6 n. 3.) I also observed that such a motion raised the question of whether a jury demand can be withdrawn without the defendant's consent, and added that the existence of this issue weighed "in favor of granting FedEx's motion." (*Id.*) The efficacy of P.C.Pa.'s unilateral withdrawal of its jury trial demand, however, was not decided.

In response to this Court's Order of February 24, 1998, P.C.Pa. filed an Amended Complaint. The Amended Complaint, filed on March 4, 1998, effected the joinder of P.C. Data as a co-plaintiff. The amended pleading was not endorsed with a jury trial demand. FedEx's answer to the Amended Complaint, filed after its Motion to Dismiss was granted in part and denied in part, also did not demand a jury trial.

Following completion of appropriate discovery, FedEx moved for partial summary judgment. It contends that because 99.95 percent of the $1,610,121.53 claimed in Invoice # 3245–2 represents "nondirect labor expense," and not profits, P.C. Data's recovery on that invoice should be limited to .05 percent of the amount claimed, or $805.61. FedEx also asserts that it is entitled to a summary judgment ruling that P.C. Data cannot recover on Invoice # 4002, claiming expenditures of $950,000 for hardware and software needed to enable P.C. Data to perform under the Agreement.

Following completion of briefing on the partial summary judgment motion, P.C. Data moved for a jury trial. Briefing on that motion was completed on August 25, 1999. Both motions are ripe for disposition.

## II. DISCUSSION

### A. FedEx Motion for Partial Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure contemplates that a party may seek partial adjudication of a controversy prior to trial. In particular, Rule 56(d) provides that a court may "make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just."

■ In addressing a motion for partial summary judgment, a court remains guided by the familiar standards governing summary judgment motions. That is, a party is entitled to summary judgment on a particular issue only by showing that (a) there is no genuine issue as to any fact material to that issue, and (b) the movant is entitled to a judgment as a matter of law on that issue.

■ "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under the applicable law. *Id.* Rule 56 requires the entry of summary judgment where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 329, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

At issue on FedEx's partial summary judgment motion is whether PC Data is precluded, as a matter of law, from including in its damage calculations the indirect costs (properly regarded as fixed overhead) and/or the expenditures for hardware and software of $950,000 made in reliance on the Agreement. The applicable law is that provided by the State of Tennessee because the FedEx Agreement stipulates that it "shall be governed by and construed in accordance with the laws of

the state of Tennessee...." (Amended Complaint, Ex. B, ¶ 11(e).) [4]

Under Tennessee law, "[t]he usual measure of recovery for breach of contract is the value of the promised performance. The general principle is that the plaintiff is entitled to be placed, so far as can be done by money, in the same position he would have been in if the contract had been performed." *Allen v. Elliott Reynolds Motor Co.*, 33 Tenn.App. 179, 230 S.W.2d 418, 424 (1950).[5] As explicated in *Grantham and Mann, Inc. v. American Safety Prod., Inc.*, 831 F.2d 596, 601–02 (6th Cir.1987):

> Under Tennessee law, the purpose of awarding damages in breach of contract actions is to compensate for damages actually incurred by placing the plaintiff in the position he would have occupied had the contract been fulfilled in accordance with its terms, not to provide a windfall for the plaintiff. The plaintiff bears the burden of proving damages, and without adequate proof, there can be no award of damages in any amount. As a general rule, 'damages are not permitted which are remote and speculative in nature.' This rule serves to preclude recovery, however, only where the fact of damage is uncertain, i.e., where the damage claimed is not the certain result of the wrong, not where the amount of damage alone is uncertain. Once the existence of damages has been shown, all that an award of damages requires is substantial evidence in the record to permit a factfinder to draw reasonable inferences and to make a fair and reasonable assessment of the amount of damages.

Specifically, Tennessee law permits lost profits to be recovered following a breach of contract. As with any other damages, however, the particular lost profits being claimed in any given case must not be remote, uncertain or speculative by their very nature. Lost profits will be denied if it is uncertain that the defendant's breach caused the loss, or uncertain that the plaintiff would have made a profit in the absence of a breach. Moreover, even if the existence of lost profits is established, recovery is properly denied if the plaintiff fails to provide 'a sufficient basis for the jury's computation of the damage,' by 'furnishing data from which the amount of the probable loss could be ascertained as a matter of reasonable inference,' and 'determined with reasonable certainty.'

(Citations omitted).

By attempting to place the injured party in the same position it would have occupied had the contract been performed, Tennessee law seeks to "protect the injured party's expectation interests by awarding the party the benefit of its bargain." *Eastern Sky Prod., Inc. v. Ram Graphics, Inc.*, No. 01–A–01–9305–CH00215, 1994 WL 642760, *3 (Tenn.Ct.App. Nov. 16, 1994). In this respect, Tennessee subscribes to the Restatement (Second) of Contracts approach to the award of damages for breach of contract. *See Nashville Lodging Co. v. Resolution Trust Corp.*, 59 F.3d 236, 245 (D.C.Cir.1995) (applying Tennessee law);

---

4. P.C. Data does not dispute that the law of Tennessee controls the measure of damages in this case.

5. This approach to damages for breach of contract is intended to protect the non-breaching party's "expectation interest." *See* Restatement (Second) of Contracts, § 344(a). The non-breaching party is given a monetary award that reflects the anticipated outcome if the contract had been performed, that is, had there been no breach. *Id.*, comment a. An *alternative* approach to damages is to reimburse the non-breaching party "for loss caused by reliance on the contract by being put in as good a position as he would have been in had the contract *not* been made." Restatement (Second) of Contracts § 344(b). Thus, the "expectation interest" approach assumes the existence of a contract; the "reliance interest" approach assumes the contract was not formed. While the reliance interest "may be equal to the expectation interest, it is ordinarily smaller because it does not include the injured party's lost profit." *Id.*, comment a.

*Eastern Sky, supra,* 1994 WL 642760 at *3.

Section 347 of the Restatement (Second) of Contracts provides that damages for breach of contract should ordinarily be measured by the value to the non-breaching party of the breaching party's performance, plus any other loss, including incidental or consequential loss, caused by the breach, less any cost or any loss that has been avoided by the non-breaching party not having to perform. Generally speaking, "loss in value . . . is usually just the amount of money not received from the [non-breaching party] because of the breach." 3 E. Allan Farnsworth, *Farnsworth on Contracts* § 12.10 (2d ed. 1998).

Application of this general rule to the facts of this case entitles P.C. Data to recover as damages the difference between the value of FedEx's complete performance (measured by multiplying the airbill shortage by the contract price) and the cost or other loss avoided by P.C. Data in not having to process the missing airbills. This is the approach reflected in Mr. Adler's affidavit, which takes the price per airbill and subtracts the labor costs avoided as a result of not receiving the guaranteed minimum number of airbills. Under this approach, P.C. Data does not recover the $950,000 purportedly expended to perform the contract because that expenditure is part of the cost of performance to be covered by the per airbill price to be paid by FedEx. In other words, P.C. Data would not have been entitled to reimbursement of its expenses incurred to perform under the contract; it was entitled only to the contract price.[6] The fact that exclusion of the $950,000 expenditure from the

damage calculations may mean that P.C. Data actually sustains a net loss on the contract after a damage award does not require a different result. P.C. Data is only entitled to be placed in the position it would have occupied had FedEx performed as contractually required, and not in any better position. *See Grantham and Mann, supra,* 831 F.2d at 601 (purpose of award of damages in breach of contract actions is not to provide a windfall for the plaintiff).[7]

By the same token, the breaching party is not entitled to escape the consequences of its failure to honor its contractual obligations. The law requires that it place the non-breaching party in the monetary position it would have occupied had the contractual requirements been observed. In other words, the non-breaching party's recovery is not simply limited to the net profit it would have realized from an accounting perspective after deducting fixed overhead costs. Under the formula of contract value plus consequential and incidental losses minus avoidable costs and losses, fixed overhead is simply not an avoidable cost. As recognized in *David Sloane, Inc. v. Stanley G. House & Assoc.,* 311 Md. 36, 52, 532 A.2d 694, 701–02 (1987), under the damages theory that a non-breaching party is to be placed in the position that contract performance would have effected, "it is immaterial how much of the damage award represents net profit, if any, and how much represents recovery of so much of the contract price as would have been used to offset fixed costs."

The Reporter's Note to § 347 of the Restatement (Second) of Contracts gives recognition to the fact that fixed costs,

---

6. In this regard, the FedEx Agreement provided:

> *Equipment.* Except as otherwise provided in this Agreement, Contractor, *at its sole cost and expense,* shall provide all software and hardware as may be required to render the data processing services to [FedEx] pursuant to this Agreement. [Exhibit "B" to Amended Complaint, FedEx Agreement, ¶ 4(a); emphasis added.]

7. Reimbursement of expenses incurred seeks to protect a party's "reliance interest" by placing the party in the position it would have occupied had there been no contract. P.C. Data cannot simultaneously ask to be placed in the position it would have enjoyed had there been complete performance under the contract and had there been no contract.

such as rent or property taxes, that are not avoidable when a breach of contract occurs, are not to be deducted in determining the plaintiff's expectation interest. In support of this general principle, the Reporter's Note cites to *Vitex Mfg. Corp. v. Caribtex Corp.*, 377 F.2d 795 (3d Cir.1967). At issue in *Vitex* was a contract pursuant to which the plaintiff had agreed to process 125,000 yards of the defendant's woolen material at a price of 26¢ per yard. The plaintiff prepared to perform under the contract, but the defendant never supplied any of its woolen material to be processed. The plaintiff claimed damages in the amount of the contract price (125,-000 yards × $0.26) less the costs saved by not having to perform. On appeal, the defendant argued that the award of damages was too generous because it did not exclude the plaintiff's overhead expenses. In rejecting this argument, the court explained:

> In general, overhead '... may be said to include broadly the continuous expenses of the business, irrespective of the outlay on a particular contract.' Such expenses would include executive and clerical salaries, property taxes, general administration expenses, etc. Although Vitex did not expressly seek recovery for overhead, if a portion of these fixed expenses should be allocated as costs to the Caribtex contract, then under the judgment of the district court Vitex tacitly recovered these expenses as part of its damages for lost profits, and the damages should be reduced accordingly. Presumably, the portion to be allocated to costs would be a pro rata share of Vitex's annual overhead according to the volume of business Vitex would have done over the year if Caribtex had not breached the contract.
>
> Although there is authority to the contrary, we feel that the better view is that normally, in a claim for lost profits, overhead should be treated as a part of gross profits and recoverable as damages, and should not be considered as part of the seller's costs. A number of

cases hold that since overhead expenses are not affected by the performance of the particular contract, there should be no need to deduct them in computing lost profits. The theory of these cases is that the seller is entitled to recover losses incurred and gains prevented in excess of savings made possible; *since overhead is fixed and nonperformance of the contract produced no overhead costs savings, no deduction from profits should result.*

*Id.* at 798 (emphasis added).

One of the cases cited with approval in *Vitex* was *Jessup & Moore Paper Co. v. Bryant Paper Co.*, 297 Pa. 483, 147 A. 519 (1929). In that case, a contract provided that the plaintiff would furnish monthly to the defendant, and the defendant would purchase, at least 150 tons of soda pulp. While the plaintiff was ready, willing and able to supply the contractual minimum amount of soda pulp, the defendant accepted much less than the minimum. In fixing damages for this breach, the trial court held that overhead and administrative expenses should be included as expenses of production and deducted from the contract price. The result was that the plaintiff, who claimed damages of almost $100,000, was awarded only the sum of $5,885.72. On appeal, the plaintiff contended that fixed overhead should not have been considered a cost of manufacture. The Pennsylvania Supreme Court agreed, explaining:

> The overhead expenses, which defendant insists should be added as a cost of manufacture, were constant in character, and would not have been affected by the performance of the additional work. There was no proof that these necessary corporate costs would have increased had the Bryant contract been completed, and such sums cannot therefore be used to reduce the damage allowable. The expenditures with which the plaintiff was charged by the court below were

not necessarily incident to the carrying out of the contract entered into....

*The defendant was entitled only to a deduction for cost which would necessarily have been incurred in the performance of the contract. The seller was entitled to be reimbursed for his loss, which is not to be decreased by subtracting charges necessarily involved in the general operation of its business....*

*Id.* at 494–95, 147 A. 519, (emphasis added). The Supreme Court decreed that damages be awarded in favor of the plaintiff in the amount of $94,671.49.

*Vitex* and *Jessup & Moore* reflect the understanding that a reduction in the damage award for overhead would render the plaintiff less than whole. As explained in *Buono Sales, Inc. v. Chrysler Motors Corp.,* 449 F.2d 715, 720 (3d Cir.1971):

[I]t is apparent that the fixed expenses of a business must be paid from the profits remaining after all direct costs have been paid. Unless damages restore the latter amount to plaintiff, it will not be fully compensated for the breach. [E]ven a business which has suffered a net loss before the breach is entitled to damages if the breach deprives it of additional revenue which it could have used to help defray its overhead expenses.

This approach to damages in a breach of contract setting is reflected in Section 2–708 of the Uniform Commercial Code, adopted in Tennessee at Tenn.Code Ann. § 47–2–708 (1999). This section provides the measure of damages where there has been a non-acceptance or repudiation of goods. In pertinent part, § 2–708 generally provides that if the difference between the market price of the goods at the time and place of tender and the unpaid contract price is inadequate to place the seller in as good a position as performance would have done, the measure of damages is to be the "profit (*including reasonable overhead*) which the seller would have made from full performance by the buyer, to-

gether with any incidental damages...." (Emphasis added).

It has been recognized that the theory underlying Section 2–708 compels the conclusion that the fixed costs of doing business are not to be deducted in computing damages for "lost profits" in the context of a services contract. *See David Sloane, Inc.,* 311 Md. at 44, 532 A.2d at 697–98. As explained in *Vitex,* the UCC "is persuasive ... because it embodies the foremost modern legal thought concerning commercial transactions." 377 F.2d at 799. The fact that Tennessee law contemplates inclusion of overhead in a damages award where the buyer of goods breaches a contract weighs heavily in favor of finding that Tennessee law would not exclude overhead from the damages calculation when the buyer of services breaches the contract.

"Tennessee law permits the recovery of all damages that are the normal and forseeable result of a breach of contract." *Moore Constr. Co. v. Clarksville Dep't of Elec.,* 707 S.W.2d 1 (Tenn.Ct.App. 1985). It is plainly foreseeable that a business will allocate part of the payments to be received under a contract to defray overhead. *See Vitex,* 377 F.2d at 799. "The aim of the law is to place the seller in the same position from a monetary standpoint that he would have occupied if the buyer had not breached the contract." *Margaret Mill v. Aycock Hosiery Mills,* 20 Tenn.App. 533, 101 S.W.2d 154, 158 (1936). By requiring a seller of services to exclude from its damage calculation overhead actually incurred and which it intended to offset by the contract price would render the plaintiff less than whole.

FedEx, however, argues that *Lamons v. Chamberlain,* 909 S.W.2d 795 (Tenn.Ct. App.1993), compels exclusion of PC Data's overhead from its damage calculation. In *Lamons,* the plaintiff had contracted to buy a business from the defendant. Under the agreement, the plaintiff took occupancy of a building leased by the defendant from a third party. While there was

still approximately 18 months remaining on the lease, the defendant breached the contract by requiring the plaintiff to vacate the premises. The trial court concluded that rescission of the agreement was the proper remedy, and awarded the plaintiff her down payment and the money she had paid to defendants under the installment sale agreement. The Tennessee appellate court found that rescission was an inappropriate remedy. Instead, the appellate court determined that the proper measure of damages was the amount of profits plaintiff would have realized from the business "for the duration of time allowed under the lease agreement." *Id.* at 801. The appellate court further directed that, on remand, the trial court would have to determine the net profit over the eighteen months remaining on the contract by deducting from receipts the expenses required for the maintenance of the business. *Id.*

Contrary to FedEx's assertion, *Lamons* does not stand for the proposition that overhead actually incurred must be deducted in determining the value of plaintiff's expectation interest. In *Lamons*, the business was terminated so that all costs would or could have been avoided as of the date that the plaintiff went out of business. For example, lease and insurance costs would be voided as of the date the business ended. Thus, *Lamons* is consistent with the general principle that "[a] party's expectation interest is measured by his anticipated receipts and losses caused by the breach less any cost or other loss he has avoided by not having to perform." *Lafarge Corp. v. Wolff, Inc.*, 977 S.W.2d 181, 187 (Tex.Ct.App.1998).

In this case, the evidence, viewed in the light most favorable to PC Data, supports a rational inference that the "non-direct labor expenses" included in Invoice # 3245–2 represented expenses actually incurred that were not dependent upon the

volume of airbills provided by FedEx.[8] Accordingly, FedEx is not entitled to a decree that overhead incurred must be deducted from the damage calculation.

FedEx, however, is entitled to summary judgment with respect to Invoice # 4002, which covers the hardware and software expenditures made in reliance on the FedEx agreement. Under Tennessee law, only when anticipated profits under a contract cannot be proved with the requisite degree of certainty may the injured party recover the expenses "incurred in preparation and part performance of the contract." *Eastern Sky Prod., Inc.*, 1994 WL 642760 at *4. Tennessee law is consistent with the principle set forth in § 349 of the Restatement (Second) of Contracts, which provides for recovery based upon a reliance interest *as an alternative* to the measure of damages based upon the injured party's expectation interests. As explained in Comment a to § 349:

> Under the rules stated in this Section, the injured party may, if he choses, ignore the element of profit and recover as damages his expenditures in reliance. He may choose to do this if he cannot prove his profit with reasonable certainty. He may also choose to do this in case of a losing contract, one under which he would have had a loss rather than a profit. In that case, however, it is open to the party in breach to prove the amount of loss, to the extent that he can do so with reasonable certainty ..., and have it subtracted from the injured party's damages. The resulting damages will then be the same as those under the rule stated in § 347. If the injured party's expenditures exceed the contract price, it is clear that at least to the extent of the excess, there would have been a loss. For this reason, recovery for expenditures under the rule stated in this section may not exceed the full contract price.

8. PC Data, of course, must establish that these expenses were actually incurred. If not, they must be excluded from the damage

calculation. *See Moore Construction, supra,* 707 S.W.2d at 15–16.

In this case, plaintiff has sought recovery of both the value of its expectation interest as well as the value of its reliance interest. Under such an approach, P.C. Data would recover more than the contract price itself. Tennessee law does not sanction such a result.

In its brief in opposition to the partial summary judgment motion, P.C. Data suggests that it should be allowed to present to the jury alternative damage theories. But Tennessee law allows pursuit of a damage claim based upon the plaintiff's reliance "interest" only "where the prospective 'benefit of the bargain' damages prove too difficult or speculative to calculate...." *Nashville Lodging,* 59 F.3d at 245. P.C. Data insists that it is "entitled to damages based upon its expectation interests, or loss of net profit." (Brief in Opposition to Partial Summary Judgment Motion (Dkt. Entry 58) at 9.) P.C. Data does not contend that, as a consequence of the alleged breach of contract, it is unable to prove the lost profits with the requisite degree of certainty. Accordingly, it is not entitled to pursue the "backup remedy" based upon its reliance interests. Accordingly, FedEx's motion for partial summary judgment will be granted insofar as Invoice # 4002 in the amount of $950,000 is concerned.

## B. P.C. Data's Motion for a Jury Trial

P.C. Data's motion for a jury trial rests on two independent bases: First, it asserts a right to rely upon the jury trial demand initially made by its subsidiary, P.C.Pa. And second, it appeals to this Court's discretion to allow a jury trial pursuant to Rule 39(b) of the Federal Rules of Civil Procedure. Both approaches pursued by P.C. Data have merit.

Rule 38(d) of the Federal Rules of Civil Procedure provides that "[a] demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties." It is undisputed that P.C.Pa. made a proper demand for a trial

by jury when it filed its original complaint. Although P.C.Pa. purported to withdraw its jury trial demand, in an effort to avoid the withdrawal of the reference from the Bankruptcy Court, it is also undisputed that FedEx did not consent to the withdrawal of the demand for a jury trial. Furthermore, in granting the motion for withdrawal of the reference, I noted that resolution of the question of whether P.C.Pa. could unilaterally withdraw its demand for a jury trial was an open issue that militated against having the matter remain in the Bankruptcy Court. At no time has the efficacy of the unilateral withdrawal of the demand for jury trial been adjudicated in this case.

Neither party has cited any case authority on the question of whether a jury trial demand may be withdrawn unilaterally. In *Reid Bros. Logging Co. v. Ketchikan Pulp Co.,* 699 F.2d 1292, 1304 (9th Cir.), *cert. denied,* 464 U.S. 916, 104 S.Ct. 279, 78 L.Ed.2d 259 (1983), the court suggested that a unilateral withdrawal could be effective if made prior to expiration of the period during which another party would be required to make a jury trial demand, i.e., "not later than 10 days after the service of the last pleading directed to [an issue triable of right by a jury.]" Fed. R.Civ.P. 38(b). In *Chemical Bank v. Affiliated FM Ins. Co.,* No. 87–Civ.–0150, 1994 WL 719681, *11 (S.D.N.Y. Dec. 28, 1994), the court read *Reid Bros.* as recognizing "a window for the unilateral retraction of a jury demand before the opposing party's 10–day timetable for asserting its own jury demand has expired." The premise for these decisions is that the opposing party cannot be said to have relied upon the withdrawn jury trial demand because it could have made its own demand within the time frame established by Fed. R.Civ.P. 37(b). In this case, the efficacy of P.C.Pa.'s unilateral withdrawal of the jury trial demand was not decided as of the time that the Amended Complaint was filed. FedEx had indicated that it did not regard the withdrawal to be effective. In *Reid Bros.,* the court held that a party who

contested a jury trial demand could not later contest the unilateral withdrawal of that demand. 699 F.2d at 1304–05. By a parity of reasoning, a party who demonstrates reliance on the jury trial demand and who does not otherwise express assent to a withdrawal of that demand, such as FedEx here, should not later be heard to say that the unilateral withdrawal was effective. Moreover, P.C. Data, which was aware that FedEx had not conceded the efficacy of P.C.Pa.'s unilateral withdrawal of jury trial demand, could reasonably rely upon the original demand for a jury trial.

■ ■ Contrary to FedEx's assertion, the fact that the Amended Complaint, which effected a joinder of P.C. Data as a co-plaintiff of P.C.Pa., did not include a jury trial demand, did not cause P.C. Data to waive its right to a jury trial. As recognized in *Auwood v. Harry Brandt Booking Office, Inc.,* 100 F.R.D. 804 (D.Conn.1984), "a party [is not] required to reassert, on pain of waiver, a previously stated jury demand in successive amendments [of pleadings], whether they add parties or not, so long as the same basic issues remain at the core of the litigation." In this case, the amended complaint served to join the real party in interest to the FedEx Agreement. The character of the suit was not changed by the amended complaint, and the original jury trial demand, not having been validly withdrawn, remained viable.

■ Even if P.C.Pa. had effectively withdrawn its demand for a jury trial, so that P.C. Data could not rely upon it, the factors to be considered under Fed. R.Civ.P. 39(b) in exercising discretion to allow a jury trial "not withstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right," militate in favor of granting P.C. Data's motion.

■ In determining whether to grant a motion for a jury trial, a district court should consider the following factors:

1) whether the issues are suitable for a jury; 2) whether granting the motion would disrupt the schedule of the Court or the adverse party; 3) whether any prejudice would result to the adverse party; 4) how long the party delayed in bringing the motion; and 5) the reasons for the failure to timely demand.

*Fort Washington Resources, Inc. v. Tannen,* 852 F.Supp. 341, 342 (E.D.Pa.1994). (Citing *Lee v. Boyle– Midway Household Prods., Inc.,* 785 F.Supp. 533, 535 (W.D.Pa. 1992)).

The issues in this case are plainly suitable for trial by jury. Because no date has been set for the trial of this matter, "the orderly administration of the trial calendar will not be disturbed by granting plaintiff relief from waiver." *Plummer v. General Elec. Co.,* 93 F.R.D. 311, 313 (E.D.Pa. 1981). Because an unresolved issue existed regarding whether P.C.Pa. had effectively withdrawn its jury trial demand, P.C. Data had a reasonable basis for believing that P.C.Pa.'s jury demand had not been withdrawn. Moreover, although FedEx contends that it believed that P.C. Data did not want a jury trial, it does not contest P.C. Data's assertion that P.C. Data immediately began preparing its motion for a jury trial upon discovering that FedEx believed that this matter was to proceed as a non-jury trial. (P.C. Data's Br. in Supp. of Mot. for Jury Trial at 11.)

Other than bald averments that it would be prejudiced, FedEx "has made no persuasive showing that any prejudice would result from trying this case before a jury." *Plummer,* 93 F.R.D. at 313. FedEx relies on *Tannen,* where the court held that the allowance of a jury trial "would severely hamper [the adverse parties] who have prepared their case with the mindset that there would be no jury, as well as disrupt this Court's schedule." (FedEx. Br. in Opposition to Mot's for Jury Trial at 4; *quoting Tannen,* 852 F.Supp. at 342.) However, unlike *Tannen,* the instant case has not been scheduled for trial. Nor has FedEx indicated how its preparation for

this trial would differ if the case is tried before a jury. Moreover, as noted by P.C. Data, "[i]f FedEx truly felt that a jury trial would be prejudicial, it would have consented to waive the jury trial when it had the opportunity to do so." (P.C. Data's Br. in Supp. of Mot. for Jury Trial at 10.) Accordingly, even if P.C. Data had effectively waived its demand for a jury trial, the factors set forth in *Tannen* weigh in favor of granting P.C. Data's motion for a jury trial pursuant to Rule 39(b).

## III. CONCLUSION

P.C. Data's calculation of damages based upon its expectation interest is not contrary to Tennessee law. Accordingly, FedEx is not entitled to summary judgment insofar as P.C. Data's calculation of damages encompasses overhead costs actually incurred during the term of the FedEx Agreement.

P.C. Data, however, is not entitled to recover both the value of its expectation interests and the value of its reliance interests. Accordingly, FedEx is entitled to summary judgment on that part of P.C. Data's claim which seeks to recover $950,000 expended for hardware and software needed to process FedEx air bills.

Under the Federal Rules of Civil Procedure, a party may not unilaterally withdraw a jury trial demand. Because FedEx did not consent to P.C.Pa.'s withdrawal of its jury trial demand and evidenced reliance on that demand, P.C. Data was entitled to rely upon the original jury trial demand. Even if P.C.Pa. had effectively withdrawn its jury demand, however, discretion is properly exercised in now granting P.C. Data a jury trial. Accordingly, P.C. Data's motion for a jury trial will be granted. An appropriate Order follows.

### ORDER

**NOW, THIS ___ DAY OF AUGUST, 2000,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion for Partial Summary Judgment (Dkt. Entry 53) is **GRANTED IN PART AND DENIED IN PART.** Defendant's motion is granted to the extent that plaintiff may not recover damages based upon Invoice # 4002 in the amount of $950,000. Defendant's motion is denied to the extent that it seeks to preclude plaintiff from including in its damage calculation actual fixed overhead incurred during the term of the contract at issue.

2. Plaintiff's motion for oral argument on the motion for summary judgment (Dkt. Entry 64) is **DISMISSED AS MOOT.**

3. Plaintiff's Motion for Jury Trial (Dkt. Entry 66) is **GRANTED.**

4. A scheduling conference shall be conducted on **Thursday, September 25, 2000 at 9:00 a.m.** in Room 402 of the William J. Nealon Federal Building & U.S. Courthouse, 235 N. Washington Avenue, Scranton, PA. The parties may elect to conduct the scheduling conference by telephone by notifying the Court in writing prior to the scheduled conference.